Justices Inferior Court Irwin County *vs.* Sloan and others.

[1.] In suit on a bond, the plaintiff is not held to prove its execution, unless put in issue by plea of *non est factum.*

[2.] Sureties to executor's, administrator's and guardian's bonds, are not liable to suit thereon at law, under the Act of 13th December, 1820, until the plaintiff has first established his demand against their principal, in his representative character, by suit and judgment or decree of a Court of competent jurisdiction.

[3.] In a suit against an executor or administrator, in his representative character, the judgment must be *de bonis testatoris*, except when he pleads *ne unques executor*, or a release to *himself*, and the pleas are found against him.

Debt on guardian's bond. Tried in Irwin Superior Court, March Term, 1849, before Judge Scarborough.

This was an action on a guardian's bond, dated 14th January, 1839, and recorded 14th November, 1839. The bond did not appear on its face to have been approved or attested by any person. Upon the trial, a certified copy of the bond was offered in evidence, to which the counsel for defendants objected—

1st. Because the bond shows on its face, that William Sloan is principal, and the other defendants are his securities, and there being no allegation in the declaration, that a *devastavit* had been fixed upon the principal by a judgment of a Court, according to law, and that this suit would not lie until a *devastavit* against the principal had been thus fixed.

2d. Because this bond was not recorded within *six* days from its execution, as required by law.

3d. Because this bond was not attested by the Clerk of the Court of Ordinary, or his Deputy, as required by law.

4th. Because it does not appear from the face of the bond, or any other evidence, that it was executed in the presence of the Clerk or his Deputy, or delivered to the Court of Ordinary or its Clerk.

All which objections were overruled by the Court, and the copy bond allowed to be read to the Jury without other or further proof, the Court holding that if this bond was not good as a Statutory bond, it was good as a Common Law bond. And to this decision defendant excepted.

The plaintiffs below proved the receipt by William Sloan of a large sum of money, as guardian of the infant wards of the *usee* Jemison ; also a demand by Jemison, as guardian, upon Sloan, the former guardian, for the property of his wards, and an offer to take good notes of Sloan, in payment of the amount due by him. Sloan refused to let him have the notes, saying he had promised the makers not to transfer them, and he could not pay the money, as he did not have it.

The order dismissing Sloan from his office of guardian, was also in evidence.

The plaintiffs below closed their case, and defendants moved to dismiss it, on the ground that plaintiffs had failed to make out such a case as entitled them to a verdict. The Court refused the motion, and defendants excepted.

After the evidence for the defendants was closed, defendants' counsel requested the Court to charge the Jury that plaintiffs were not entitled to a verdict, because they had failed to prove a *devastavit* against William Sloan, the guardian and principal in said bond ; which charge the Court refused to give, but instructed the Jury as follows:

"I have been requested by defendants' counsel to instruct you that you cannot find a verdict against the securities of William Sloan, because it is insisted the securities of Sloan, the former guardian, cannot be held liable until a *devastavit* has been first established against Sloan, the principal, in a separate suit against him. This position is correct, as the law stood before the passage of our own Act of 13th December, 1820. The Legislature designed some benefit to result from that Act to heirs, distributees and legatees. If the Legislature did not intend to give the right to sue the principal and his securities in the same action, or where principal had been first sued, without this circuity of action, by establishing a *devastavit*, first against the principal, and then, having again to sue him and his securities, the Act is futile, insensible and valueless, and affords no benefit or right to the heirs, dis-

tributees and legatees at all, to which they were not entitled at Common Law, and before the passage of the Act.

To which charge, and refusal to charge, defendant excepted, and on these several exceptions, error has been assigned.

C. B. COLE, for the plaintiff in error, submitted the following points and authorities:

1. " The liability of the securities to a guardian's bond, is not *primary*, but is an *ultimate liability*, and suit cannot be maintained on the bond, until a *devastavit* has first been established against the guardian, according to law." *Cameron et al. vs. Justices, &c.* 1 *Kelly's R.* 37. *James vs. Wallace,* 4 *McCord's R.* 121 *and* 113. 3 *McCord's R.* 225 *and* 412. 1 *Munford's R.* 1. 1 *Wash. Virg. R.* 40. 2 *So. Ca. Const. R.* 723. 2 *Stewart & Porter,* 70.

2. The bond in this case is pretended to be taken under the Statute authorising the Clerk of the Court of Ordinary to take and attest the bonds required to be given by guardians appointed by the Court of Ordinary, but it substantially varies from the requirements and directions of the Statute, *in this*: the Statute requires the bond to be attested by the Clerk or his Deputy, and recorded within six days thereafter, neither of which was done in this case. *Prince's Dig.* 244, 252. 1 *Iredell's R.* 597.

3. This bond cannot be sustained as a Statutory bond, because it is not *taken* and *evidenced* in the manner prescribed by the Statute authorising it. *It is, therefore, void. Averill vs. Dickerson,* 1 *Blackford's R.* 3 *and* 4. *Blaney vs. Findley and others,* 2 *Blackford's R.* 338. *Ridabock vs. Levy,* 8 *Paige's R.* 197. *Van Wezel vs. Van Wezel,* 3 *Paige,* 38.

4. It is not valid as a voluntary bond, because there was no evidence of its delivery, and because it was not executed in presence of, and attested by the Clerk or his Deputy, and because the Clerk had no authority to take a bond different from that prescribed and required by the Statute, and because it is an imperfect and incomplete bond. To be a good voluntary bond, it must have all the incidents of a deed; it must be *signed, sealed, attested* and *delivered.* Two of these incidents are wanting in this case, *to wit: attestation and delivery.* 3 *Kelly,* 512, 582. 1 *Iredell,* 597. 1 *Watts & Searg.* 261. 5 *Porter's R.* 413. 1 *Stew. & P.* 56. 1 *Iredell's R.* 597.

5. The Court erred in admitting the bond in evidence, without proof of its delivery. The delivery could only be proved by the subscribing witness. 1 *Gilbert's Ev.* 103. *Buller's N. P.* 250. 1 *Phillips' Ev.* 464. 3 *Ib.* 126, *note*, 876.

6. The Court erred in deciding that it was not necessary for the plaintiff to prove, by judgment of a Court of competent jurisdiction, a *devastavit* against the guardian, before he could recover against the securities.

And he also erred in deciding that the securities were primarily liable, and might be sued in the same action with the principal in the bond, without evidence by judgments of a *devastavit* by the principal. 1 *Kelly's R.* 37. 4 *McCord*, 121.

7. Official bonds, not good by Statute, but by the Common Law, can only be enforced according to the rules of the Common Law. 3 *Kelly's R.* 512. 1 *Dev. R.* 153. 3 *Dev.* 86.

8. The power to the Clerk to take and attest this bond, must be strictly and literally pursued. The Statute is the power, and all the formalities prescribed by the power, must be strictly pursued. 4 *Kent*, 329. 1 *Phillips' Ev.* 464. 1 *Sug. on Vendors*, 294.

E. WARREN and JAS. L. SEWARD, for defendants in error, contended—

1. That the bond is good, though not taken in conformity to the Statute. 3 *Wend.* 48. 2 *Hawks.* 42. *Dudley*, 66. 2 *McCord*, 107. 2 *Bailey*, 362. 1 *Kelly*, 582. And should be denied on oath. *Prince*, 421.

2. The Act of 1820 was intended to give the party an immediate remedy against the trustee and his sureties, and should be so construed. *Dwarris on Stat.* 44, 39 *to* 62. 3 *Kelly*, 146, 156, '7, '8. 5 *Paige's Rep.* 92.

*By the Court.*—NISBET, J. delivering the opinion.

We think the bond in this case good as a voluntary bond. See *Stephens et al. vs. Crawford, use of Ward*, 1 *Kelly*, 574, and 3 *Kelly*, 499.

[1.] Several questions were made as to the execution of the bond, all of which were properly overruled. Without inquiring whether any of them could be sustained upon principle, it is enough to say, that there was no plea of *non est factum* filed by

Justices Inferior Court Irwin County *vs.* Sloan and others.

the defendant; and, therefore, the question of execution was not legally made.    3 *Kelly*, 499.

[2.] The great question made is, whether, under the Act of 13th December, 1820, sureties on a guardian's bond are liable to suit, until after a judgment or decree of a Court of competent jurisdiction has been rendered against the principal, fixing his liability in his representative character.    This Court has determined that they are not, and are now fully confirmed in the construction which they have heretofore given to the Act of 1820.*    Some difference of opinion has prevailed among members of the profession, and upon the Circuit Bench, as to the true construction of the Act of 1820.    No uniform construction, so far as we are informed, has prevailed—clearly, no uniform construction, different from that which we have given.    The weight of judicial authority in the State, I believe, is in favor of our view of it.    Be this as it may, we are now again called upon to give to it a uniform and permanent construction.    We have done so, not without labor and diligent research, and although some of us doubted, when the question first came before this Court, yet, now, all doubt is dispelled.    I think it will be found by the careful reader, that our construction is the only one which is reconcileable with the principles which regulate the rights and obligations of trustees and their sureties; and farther, that it does not hinder the intention of the Legislature to reduce the number of actions, which, before the Act of 1820, was necessary to charge sureties of guardians, executors and administrators.

By the Act of 22d December, 1820, guardians are required to give bond and security in double the amount of their wards' estate, "in conformity with the laws now in force in this State." *Prince*, 244.    The form of the bond is not prescribed.    The oath of the guardian is to perform the duties of guardian, " according to the laws of this State."    Both the oath and the bond were no doubt intended to secure the faithful execution of the trust, according as the duties of that trust are defined in the general laws of the State.    A bond "in conformity with the laws in force in this State," must mean a bond so conditioned, as to secure the execution of the guardian's trust, as it is recognised by those laws. There is no difference between those general legal principles, which settle the liabilities of executors and administrators and their sure-

*See *Ray vs. The Justices, &c. of Macon Co.*   6 *Ga. Rep.* 303.—[Rep.]

ties, and those which settle the rights and liabilities of *guardians* and their sureties. The laws of the trusts are generally the same. I apprehend that it will, at all events, be conceded that there is not such a difference as will affect the question under discussion.

In order to arrive at the meaning of the Legislature, in the Act of 13th December, 1820, it is indispensable to ascertain what was the law relative to administrators, executors and guardians and their sureties, before its passage. The old law and the mischief, are the key to the remedial Statute.

No creditor, legatee or distributee, has any right, in the first instance, to call upon an executor or administrator, but in respect of the effects which he has in hand, belonging to his testator or intestate. A debt is due from the decedent, or rather from his estate, to the same intent that it was due during his life. Legacies and bequests are his gifts, and are made out of that estate, the disposition of which, he is by law entitled to make, and distributive shares are the interests which the law creates in that estate, in behalf of those who are his heirs. The executor or administrator, if he is not made chargeable by a mal-administration of the trust, is no more liable for debts or legacies, or distributive shares, than any other person. This is the general rule of the law. No attention is here necessary to those exceptions which grow out of his assent to legacies—his promise to pay debts, &c. When, therefore, suit is brought for these claims, and they are established, the judgment must be entered against the effects alone of the decedent. This follows, necessarily, from the principles stated. And when the judgment is thus rendered by a Court of competent jurisdiction, it is conclusive of the fact, that there are assets in his hands, liable to be subjected to its payment. If there are no effects, or only enough to pay in part, or if he has fully administered, or if he has never been the representative of the estate, or has paid the claim, or has been released, or if any other state of facts exists, which would preclude a recovery by the plaintiff, it is his duty to plead, in such form as to protect himself. He is presumed to know the true condition of the estate in his hands, and it is his right so to exhibit it as to protect himself and also others interested. If, therefore, he fail to plead, that failure is an admission of assets; or if he does plead, and the plea is found against him, and a judgment is rendered against the assets, it is a judicial finding of assets, and he cannot afterwards open it, and

inquire into the question of assets or not.    *Will. Ex'r,* 2 *vol.* 1389.
*Ewing vs. Peters,* 3 *T. R.* 685.    2 *Stra.* 732.

The first step to be taken by creditors and others, therefore, is, to call the executor, administrator or guardian to account *in his representative character.*    Their claim is against the assets of the estate, and against nothing else.    They can proceed, in the first instance, against nothing else.    They must show that in law it is valid—the amount of it—and that they are entitled to a judgment against the effects.    If the claim is false, or has been paid, or if by law it is not entitled to payment, or if there is nothing out of which to pay it, nothing in the hands of the representative legally liable to it, and these things are pleaded, it will fail; if otherwise, they get judgment as creditors of, or claimants on the estate, against the *goods* of that estate.    As the executor, administrator or guardian is the legal representative of the estate, the proceeding must be against him, but against him in that character; and the judgment passes against him, to be levied of the goods of the testator in his hands.    Equally must they proceed against him as the representative, because no one but him is entitled to defend the estate.    The estate is entitled to be heard in Court against the demand.    Besides, the representative is entitled to be heard, and to exhibit the condition of the trust in his hands. He must be, as trustee, admitted to the right of accounting.    In this view of the principles which govern a suit against a representative, how, it may be confidently asked, can a judgment be entered against him in his personal character—*de bonis propriis.*    Either the philosophy of the matter is wrong, or it cannot be done.    We shall see that upon authority it cannot be done, except under a few special circumstances.

Suppose, then, the first step taken, and that a judgment is had against the representative, to be satisfied out of the effects of the estate in his hands.    How then stands the case ?    That judgment is conclusive of assets, legally liable to pay it.    The law presumes that the representative has them in hand, ready to respond.    Nor is this an unreasonable presumption; for if he has them not, or if the estate which he represents was not legally liable to such a judgment, it was competent for him to show it by proper pleas. There being a demand established by a judgment, and there being effects in his hands to pay it, it becomes his duty, as trustee, to apply them.    But suppose he does not.    Why, then, the failure to

apply them is a breach of his trust—a *devastavit—for which he be-comes personally liable.* We have now arrived at the ground of his personal liability. Until his failure to pay the judgment, there is no liability on him *to a suit*—there is no pretence of claim ; for the presumption of the law is, that the *estate* is able to pay its own liabilities, and also that the representative will faithfully execute his trust. If he does not execute it, the plaintiff in the judgment has a ground of action against him, personally. He may proceed against him by action on the judgment, suggesting a *devastavit ;* or he may cause a return of *nulla bona* to be made on the execution issued on it, and then proceed. The judgment and the return will be conclusive evidence against the trustee. Or where bond is given, he may sue him on his bond. To reach the sureties, then, where bond and security is given, the second step to be taken is this suit against the representative to charge him personally. Suit being brought against him, personally, for the default, and judgment had, and execution issued, and a return of *nulla bona* thereon ; then, and not till then, anterior to the Act of 1820, could the party *sue* the securities.

According to these propositions, it is established, first, that before the Act of 1820, a judgment against the guardian, executor or administrator, in his representative character, was necessary, before one could proceed against him personally. Such a judgment is the only legal evidence of a demand against the estate. And secondly, that in order to subject the sureties upon his bond, three suits were necessary, to wit : a suit against the trustee, in his representative character, a suit against him personally, and a suit against the sureties. The latter proposition has, however, been denied, and upon that denial an argument is founded against the construction which we give to the Act of 1820. The argument is this : The Act of 1820 was passed obviously to prevent the multiplicity of suits, before that time necessary to charge sureties. Before that time only two suits were necessary; if so, and if it is still held that two suits are necessary since the Act, to wit, one against the guardian, in his representative character, and one against the principal and his sureties; then the object of the Act of 1820 is not obtained—there is no reduction of the number of suits. In other words, the Legislature, intending by the Act of 1820, which authorises principals and sureties to be sued in the same action, thereby to prevent a multiplicity of suits, and

Justices Inferior Court Irwin County *vs.* Sloan and others.

two only being necessary to charge the sureties before its passage, the inference is a fair one that, by the Act of 1820, the Legislature meant to dispense with the suit against the principal, in his representative character, and to permit him and his sureties to be brought before the Court, and to be charged in one action.   No other construction, say the defendants, will give effect to the Legislative will ; and without it, the Act of 1820 is wholly unmeaning.   But are they right in the assumption with which they start ? I think I have shown that they are wrong; that a judgment is first necessary against the effects in the hands of the executor, administrator or guardian, before he can be sued personally ; and a judgment was necessary against him personally, anterior to the Act of 1820, before his sureties could be proceeded against at all. The idea of the counsel for defendant, and of the Court below, seems to have been based upon a practice which at one time obtained in the Courts of this State, in a suit against an executor or administrator, to enter up alternative judgments—judgments *de bonis testatoris, si non, de bonis propriis,* and thus to charge him personally and representatively in the same action.   According to principle, this practice was wrong, and was repudiated by the Judges in Convention.   *See Dudley's Rep.* 2.

[3.] The rule is this : "Whenever the action against an executor or administrator can only be supported against him in that character, and he pleads any plea which admits that he has acted as such, (except a release to himself,) the judgment against him must be that the plaintiff do recover the debt and costs, to be levied *out of the assets of the testator,* if the defendant have so much, but if not, then *the costs* out of the defendant's own goods." 2 *Will. Ex'rs,* 1409.   1 *Saunders,* 335, 336, *in note to Hancock vs. Proud. Wentw. Off. Ex.* 341, 346.   *Rock vs. Leighton,* 1 *Salk.* 310.   *Ramsden vs. Jackson,* 1 *Atk.* 292, 294.   *Ewing vs. Peters,* 3 *T. R.* 685. *Barrow vs. Wade,* 7 *S. and M.* 49. *Pope vs. Robinson,* 1 *Stew.* 415. . *Siglar vs. Haywood,* 8 *Wheat.* 675. *Jameson vs. Martin,* 3 *J. J. Marsh.* 330.

If the judgment is entered in any other form, it is erroneous. If, however, the defendant pleads *ne unques executor,* or *administrator,* or a release *to himself,* and it is found against him, the judgment is that the plaintiff recover both the debt and costs, in the first place, *de bonis testatoris si, &c.* and *si non, &c. de bonis propriis,* 2 *Will. Ex'rs,* 1409.   *Bro. Ex'rs,* 34.   1 *Roll. Abr. p.* 930.

*Cro. Jac.* 648.    *Wentw. Off. Ex.* 338, 340, 14 *edit.*    1 *Saund.* 336, *b. note* 10.

No judgment being possible, personally, against the executor or administrator, in an action against him as such, it was indispensable to sue him in a new and separate action; and the argument in favor of the construction of the Act of 1820, claimed by the counsel for the defendant, and also by the Court below, to which I just now adverted, falls to the ground.

It is not pretended that, prior to the Act of 1820, after a judgment *de bonis testatoris,* the executor or administrator and his sureties could be united in the same action, for the default of the executor or administrator in not paying it. Three suits were, therefore, necessary before that Act. The old law being as I have stated it, the mischief was the necessity of suing the principal and his sureties after the default separately, making three actions indispensable before a recovery could be had against sureties. To remedy that mischief, the Legislature, in 1820, declared that principals and securities to guardians', executors' and administrators' bonds might be sued in the same action. That is, when a judgment is had against the goods of the estate, then, instead of suing the representative, personally, for the *devastavit,* and afterwards his sureties, as heretofore, the plaintiff might unite them in the same action. Admitting, then, that we are right, and that it is still necessary to obtain a judgment or decree against the goods of the estate, before, under the Act of 1820, the sureties can be sued, still the end proposed by the Legislature, in passing that Act, is accomplished; for by it the number of suits necessary to charge sureties is reduced from *three* to *two.* The Act subserves a very intelligible and a very valuable purpose. It does not change the law, as I shall show, regulating this subject, one jot or tittle. It does not, in the least, mar the symmetry of that system of rules which govern this most interesting subject matter; it simply authorises, as I have stated, the joining of principals and sureties in the same suit. It refers alone to the plaintiff's remedy; the rights of all parties remain as before. The draftsman of the law understood his work, and with admirable skill so framed it as to avoid multiplicity of suits, and yet leave all the rights of the parties as they were. The positions thus far taken are all supported in the authorities referred to. That before the Act of 1820, the three suits were necessary to charge the sureties,

see particularly the case of *Braxton vs. Justices of Spottsvylvania Court*, 1 *Wash. Virg. R.* 31. *Gordon's Administrators vs. Justices of Frederick*, 1 *Munford's R.* 1. In the latter case, the whole doctrine is reviewed, with signal ability, by Judge Tucker. *Call vs. Ruffin*, 1 *Call's R.* 333, and *Jones vs. Anderson*, 4 *McCord's R.* 113, and the authorities referred to in these cases.

I propose, now, briefly to consider the Act of 13th. *Dec.* 1820, and to apply the point made under it with more particularity. Let it be understood, that the demand made by the plaintiff in error is not that there shall be a separate action against the guardian, in his personal character, and a judgment and a return of *nulla bona* as formerly, *before* the sureties can *be sued* on the bond. It is conceded that, by the Act of 1820, the sureties may *be sued* on their bond, without this. The distinctive point is this: is it necessary, since the Act of 1820, that the plaintiff in this action should, by a judgment or decree of a Court of competent jurisdiction, establish his claim against the guardian in *his representative character*, before the sureties can be liable on their bond? According to the principles already stated, they cannot, unless that Act expressly or by legal construction makes them liable. I have already shown what I believe to have been the object of that Act; and that the object is fully carried into effect upon the requirement we make, that there should be such a judgment or decree, as a condition precedent to the liability of the sureties, and have thence derived the argument that the Legislature did not intend to repeal the law which, prior to the Act, required such judgment or decree, as a condition precedent to the liability of sureties.

Neither expressly or by implication, does the Act of 1820 dispense with the suit and judgment or decree against the guardian, executor or administrator in that character.

The title declares it to be "An Act to authorize suits to be instituted against securities to executors', administrators' and guardians' bonds, in the same action with the *principal* thereto."

The preamble recites the fact, that it has been decided by the Superior Courts, that such sureties could not be sued until the principals have been sued to insolvency, whereby great injury to the interest of heirs, distributees and others may accrue. And the first section, "for remedy whereof," enacts, that all sureties to executors', guardians' and administrators' bonds, shall be considered as joint, or joint and several obligors, ("as the case may

be,") with the principal or principals in said bond, " so as to au-
thorize any heir or heirs, distributee or distributees, administrator
*de bonis non*, or others concerned, to sue such principal or princi-
pals, and security or securities to such bond, or either of them,
in the same action." To which enactment there is a *proviso*, that
the principal in the bond, if within the limits of the State, shall
be first sued, or shall be sued in the same action with the sureties,
and shall, in that action, be distinguished as principal.

The second section of the Act provides, that in all cases where
judgment shall be obtained, in conformity with the first section,
execution shall issue against both principal and surety, *but shall
be levied on the property of the principal first;* and in case no pro-
perty of the principal shall be found in the County, on which to
levy the execution, or not enough to satisfy it, then it shall be lev-
ied on the property of the sureties, or either of them. This sec-
tion provides farther, that in all cases where sureties have paid
the whole or any part of said execution, they shall have the use
and control of it, to indemnify themselves out of their principal.

The third section declares, that the Act shall not extend to
bonds executed before its passage; and these are all of its enact-
ments. *Prince*, 445.

Now, from the title and preamble, and from the whole body of
this Act, it is manifest that it relates to *the parties to the bond.* It
contemplates principals and sureties to the contract of which the
bond is the evidence. It relates to the remedy of heirs, distribu-
tees and others upon that bond. Now, as I shall insist, the exe-
cutor, administrator or guardian, is no party to that contract *in
that character.* He derives his trust character from the will and
the Ordinary. As an *individual*, he enters into bond—he con-
tracts with the Ordinary—for the faithful execution of the trust.
It is as an individual that this Act contemplates him. It provides
additional remedies against him and his sureties, as personal con-
tractors with the Ordinary. The sureties are the sureties of the
individual. The Act declares them joint, or joint and several ob-
ligors with him, for the purposes of a suit against them all jointly.
In his personal character as principal, and in their character as his
sureties, it makes them suable in the same action. It contem-
plates *him*, at that *time*, and in *that position*, when, and in which,
by the general law, he is himself personally liable to be sued for
a default; and, whereas, by the old law, at *that time*, and in *that*

*position*, he could not be sued jointly with his sureties, but must needs be separately sued to insolvency, before his sureties could be sued at all; *now*, by the new law, he may be individually sued and his sureties with him, in one and the same action. This is the head and front of the offending of the Act of 1820. It does not look to him as trustee, or to his relations with the estate which he represents. It leaves them, and the law which governs them, just where they were. One of the requirements of that law, I have shown, is, that neither he nor his sureties are liable until there is a decree or judgment against the effects in his hands, from the non-payment of which springs his personal liability. According, then, to the fair intent and meaning of the Act of 1820, such a judgment or decree is as necessary as it ever was.

This is a suit by the Justices of the Inferior Court of Irwin County, for the use of certain minors, by their guardian, against a former guardian and his sureties, on their bond. The condition of the bond is, that the principal shall well and truly demean himself as guardian, agreeably to his letters of guardianship, and agreeably to law, in such cases made and provided. This bond, I have said, is a contract by the guardian and his sureties with the Ordinary. He and they stipulate, that he will well and truly demean himself as guardian, according to law. It is his duty, by law, to pay over to a subsequently appointed guardian, the effects of his wards in his hands; and if he fails to do so, when, according to law, demanded, he fails to demean himself according to law, and there is a breach of his bond. Upon this breach the sureties are liable. But how liable? Their liability upon this contract is an *ultimate liability.* It is secondary, first, to the liability of the estate, or of the guardian in his representative character; and it is also secondary to his personal liability for his own default. They agree that he, in his personal character, shall demean himself according to law. They answer for the faithful management of the trust through him; but he, himself, is not liable to be called to account, personally, according to his contract, until a legal claim upon the estate which he represents has been established. If so, how can his sureties be liable, until after the claim has been established? Are they liable prior to and in a higher degree than their principal? If they are, what becomes of the idea of suretyship? They, in that event, become principals. The Act of 1820 never looked to any such result as this.

There is no liability upon the sureties until there is a breach of the bond. There can be no breach for a failure to pay over effects, until that claim is *established* against *them ;* and there is no sufficient evidence of the establishment of such a claim, but a judgment or decree of a Court of competent jurisdiction; and this, to my mind, is the logic and the law of the case. But hear the following authorities:

The case of *Braxton, &c. vs. the Justices of Spottsylvania,* was a suit by a creditor against an executor and his sureties on their bond. One of the questions submitted to the Court in that case was, " Whether the action could be maintained before a judgment first had by the plaintiff *against the representatives of the debtor,* and an execution and return of *nulla bona ?*" The Court said, " The true question is, has the relator brought himself within the Act, or, in other words, does it appear from this record, that he is a party injured, within the words and meaning of the Act. *A man who claims as a creditor,* and means to take the benefit of the Act, *must show himself to be a creditor ;* that the testator *left assets ;* that they came to the hands of the executor; that there was a *sufficiency* to discharge his demand, or so much thereof, after paying debts of higher dignity, and that *the executor has wasted the assets.* Without this *concurrence* there is no injury done him." Again, the Court in the same case says, " But the person who means to make use of this Act, must show himself *to be a creditor in the usual course of law.* It is not enough to produce a mere document of debt; *he must first institute a suit against the executor or administrator,* because it is, in the first instance, a dispute between creditor and debtor, whether or not a debt actually exists—a dispute which the securities to such a bond, (who are strangers to the contract,) are by no means competent to manage. It is a principle of universal law, that both parties shall be heard. Let us put this case : Suppose that A binds himself in a bond to B, to pay him whatever sum C owes him, (B.) Now, before a forfeiture is incurred by A, must not B prove first the sum that C actually owes him ? Mr. Waller, the relator, therefore, ought to have shown, by *an action against the executor,* that he was a creditor." 1 *Wash. R.* 31.

In the case of *Gordon's Administrators vs. The Justices of Frederick,* (1 *Munf.* 1,) Judge *Tucker,* after reviewing the case in 1 *Wash.* 31, and quoting one of the positions of the Court in that

case, says, " I subscribe most fully to this, as to every preceding part of the opinion, which is reported to have been unanimously given in that important case."

The same doctrine precisely is held in *Jones et al. vs. Anderson,* (4 *McCord's Rep.* 116.) That was a suit against sureties. The Court there says, " The responsibility of the sureties is an *ultimate one,* and, therefore, a demand on the part of the applicant must have been *established,* and the responsibility of the administrator *established,* before they can be sued on the bond."

Both the second and first secondary liability of the sureties, of which I have spoken, are maintained by the Act of 1820. For, although after the judgment or decree is had, establishing the claim against the representative, the sureties may, by the Act, be *sued* with him personally in the same action; and although execution may issue on the judgment against them equally with him, yet, when they are so sued with him, by express stipulation in the Act, they are not *held to pay* until execution against the principal is first levied upon his property. They are not liable to a levy for any part of the debt, unless there is not property enough of the principal to be found within the County to pay it. In no event, if the principal in the bond is within the limits of the State, can the sureties be sued alone. The plaintiff is required by the Act to proceed against the principal first by suit, or to unite him with the sureties in the action. Thus careful was the Legislature not to interfere with this *ultimate* liability of the sureties. This carefulness, with other things, proves that they did not intend to change the law upon this subject, except just so far as to make sureties *suable* in the same action with their principals; and thus is manifest the truth of what I said in the outset of this discussion, that whilst the number of suits is reduced by the Act of 1820, yet the beautiful symmetry of the law is maintained.

Whether, if the principal is out of the limits of the State, the sureties may not, under the Act of 1820, be liable to be sued at law, alone, on their bond, and whether the sureties would not be liable in Equity, for a demand against the estate represented by their principal, in a case where the demand could not be established by a judgment or decree against him, on account of his absence from the State, or residence beyond its jurisdiction, are questions not made, and upon which the Court gives no opinion. I am disposed to believe, that there are cases where Equity

would grant relief against sureties, without the preliminary judg-
ment against the trustee, and that the case put is one of them.
See 5 *Paige*, 92, *and authorities there cited*.

If it be held that the suit upon the bond against principal and
sureties, which the Act of 1820 authorizes, be a suit against him
in his representative capacity, then, in that suit, he must be enti-
tled to plead and account in that character. His right of being
heard in Court against the demand of a creditor, heir, distribu-
tee, *administrator de bonis non*, subsequent guardian or other per-
son, as the legal representative of the estate, cannot be question-
ed. There, all the issues which grow out of this right are before
the Court—such as arise, for example, upon pleas of *plene admin-
istravit, plene administravit præter*, &c. &c. &c. upon which judg-
ment must be rendered against him, in his representative char-
acter alone. Could it be supposed that, at the same time, in the
same suit, judgment could be rendered against the sureties?
Suppose, though, judgment in such a suit were rendered against
him as trustee, and at the same time judgment against them, and
there is no property out of which to satisfy the judgment against
the representative, the plaintiff would be, by the Act, entitled to
proceed and collect out of the sureties. Upon payment by them,
they are entitled to control the judgment against him for remune-
ration. But what is the judgment against him? It is a judgment
against him *as trustee*, and that insolvent. So that they would take
nothing by that provision of the Act which gives control of the
judgment against him for remuneration. But suppose, that in the
joint action, it be held, that the representative is before the Court
in that character, with all the rights of defence which the law
gives to him as trustee, and he is at the same time before the
Court in his personal character, with all his personal rights of de-
fence, and, at the same time, his sureties are in the same suit be-
fore the Court, with all their rights of defence as sureties, (and all
these suppositions must exist as facts, upon the view of this case
taken by the defendants in error,) what confusion of issues—what a
jumble of pleas—what inextricable disorder—what irreconcilable
rights would not the suit exhibit! A Court of Law, if its rules
are to be retained, would be wholly inadequate to do any justice
between the parties. It could not, in the nature of the case, give
judgment against the principal in his personal character, without
violating that rule of evidence by which, alone, he can be made

personally liable, and the same thing would be true as to the sureties. The construction claimed by the defendants, involves a repeal of the well settled law which for years has governed the rights of trustees and their securities—a repeal which we are satisfied the Legislature never intended to make ; whereas, our construction retains that law, whilst it gives a valuable, beneficial effect to the Statute.

Whether, under our Statutes, the Court of Ordinary has such jurisdiction as to make an accounting before them, in certain cases, and an order that executors, guardians and administrators pay over assets in their hands, a sufficient judgment or decree against them in their representative character, as to charge the sureties, is a question of some importance, but which I forbear to discuss, it not being made on this record.

Let the judgment below be reversed.