## GIBSON *vs.* CARREKER, administrator.

1. The overruling of a demurrer to a declaration is not a good ground in a motion for a new trial.
   (a) When a public administrator resigns that office, he does not thereby resign his administratorship upon an estate by appointment, but remains administrator on that particular estate until removal or resignation accepted.
   (b) An action for damages for a breach of a bond for title made to an intestate, is a personal action surviving her, and is properly brought by her administrator and not by her heirs at law.

2. Where a bond for title had been made to an intestate during her lifetime, and when she died she owed the maker $187.15, having paid $312.85, and then her husband, by the labor of himself and his minor children, made a crop on the land and paid the balance due, the administrator, in an equitable suit against the maker of the bond for its breach, should recover in proportion to the amount which had been paid by his intestate. Thus, the whole purchase

money being $500 and she having paid $312, the recovery should be 312-500 of the value of the land at the time of the breach, with interest from such time.

(a) After the intestate's death, her husband and children were her heirs at law, and there being no administrator at that time, had a right to take possession of and work the land; and the children being minors, whatever was made by them and the father belonged to him, subject to the charge for rent.

3. Where the intestate in her lifetime made to the defendant a deed to certain other land which she owned, to secure a note for $300 for supplies, receiving from him a bond for title conditioned to make her a quit-claim title to the land when she should pay the note, and up to her death she had taken only $30 worth of supplies on the note, and after her death her husband took up the balance but paid the defendant the whole $300, in a suit by her administrator for a breach of the bond, the measure of damages is the value of the premises at the time of such breach, with interest, less the $30.

4. The plaintiff having alleged a demand, he should be compelled to stand on that allegation, or amend by alleging sufficient excuse why no demand was made. An allegation that the defendant had put it out of his power, before the suit was brought, to comply with the demand, would be sufficient.

5. While under the code (§2949), " upon a breach of a bond for title to land, the value of the premises at the time of the breach, with interest thereon, should be the measure of damages," this does not mean that the two amounts shall be returned separately by the jury; but that the value of the land at the time of the breach, with interest thereon from such time to the date of the verdict, shall be returned *in solido* as a measure of damages.

February 20, 1889.

Practice. Demurrer. Administrators. Actions. Bonds for title. Damages. Demand. Pleadings. Verdict. Before Grigsby E. Thomas, Esq., judge *pro hac vice*. Talbot superior court. March term, 1888.

Reported in the decision.

J. M. Mathews and C. J. Thornton, for plaintiff in error.

Martin & Worrill and Peabody & Brannon, *contra.*

Simmons, Justice.

A. P. Carreker, as the administrator of the estate of
Mrs. E. M. Wimberly, brought suit in Talbot superior
court against T. N. Gibson, to recover damages arising
from the breach of two bonds for titles to land, made
by Gibson to his intestate, Mrs. Wimberly, in her
lifetime. It appears from the testimony in the case
that, on the 26th day of November, 1877, Gibson sold
to Mrs. Wimberly eighty-two acres of land in and ad-
joining the village of Centreville in said county, for the
price of $500. All of the purchase money was paid
except $187.15, for which Mrs. Wimberly gave her
note, and at the same time Gibson gave her his bond
for titles in the sum of one thousand dollars, conditioned
to make her titles to the land upon the payment of the
note of $187.15. Gibson brought suit on this note and
recovered judgment at the September term, 1879, for
the principal, interest and cost, which judgment re-
mained unpaid at the date of the death of Mrs. Wim-
berly in March, 1880. On the 3d of February, 1880,
Mrs. Wimberly, desiring to obtain supplies from Gibson
to run her farm for that year, made and delivered to
Gibson a note for $300, and to secure the payment of
the same, executed and delivered to him a deed to one
hundred acres of land known as the east half of the
Johnson lot adjoining the land previously purchased
by her from Gibson. At the same date, Gibson executed
and delivered to her his bond for titles in the sum of
$600, conditioned to make her quit-claim title to said
land when she should pay the note for $300. In about
one month thereafter, Mrs. Wimberly died, having taken
up only about $30 worth of supplies on the $300 note.

After the death of Mrs. Wimberly, her husband and
nine minor children remained upon the farm and ran the

same, and in the fall of the year 1880, paid up the judgment which was outstanding against Mrs. Wimberly at her death, and which was for the balance of the purchase money of the eighty-two acres of land purchased in 1877, with the cotton raised on the farm, and in the fall of 1881, paid up the note for $300 which she had given to get supplies in February, 1880, and to secure which she had given a deed to the Johnson land, and also paid interest thereon at the rate of 18 per cent. per annum.

In 1882, Gibson purchased an execution against A. P. Wimberly, who was the husband of Mrs. E. M. Wimberly, which had been sued out against A. P. Wimberly by Saulsbury, Respess & Co. in the year 1876, for about $1,000 principal and interest, Gibson paying therefor about $100. In order to secure its payment to him by A. P. Wimberly, Gibson agreed to and did execute to said A. P. Wimberly deeds to both tracts of land, to wit, the 82 acres which Mrs. Wimberly purchased from him in 1877, and the 100 acres which she had deeded to him in 1880 to secure the $300 note for supplies, and at the same time that Gibson conveyed, Wimberly made a deed to one E. N. Stanley, who furnished the money with which to pay off the Saulsbury, Respess & Co. execution which Gibson held against Wimberly; and it is alleged that, at the same time, Gibson got pay a second time for the judgment of $187.15 and interest which he recovered against Mrs. Wimberly in her lifetime.

In February, 1885, A. P. Carreker, who was the public administrator of the county, was duly appointed and qualified as administrator on the estate of Mrs. E. M. Wimberly, and took charge of her estate including the lands before mentioned. A. P. Wimberly having failed to pay Stanley the money borrowed, the latter had brought suit in the United States court and recovered

v 82-4

judgment and sold the lands at marshal's sale. Soon after Carreker took possession of the lands, ejectment was brought against him by Stanley, and on the trial of the case, judgment was rendered in favor of Stanley, and Carreker, as administrator, was ousted. Whore-upon he brought his suit against Gibson for the breach of his bonds made to Mrs. Wimberly, his intestate. After the filing of the suit, Carreker resigned his office of county or public administrator, but did not resign as the administrator of the estate of Mrs. Wimberly.

Under the charge of the court, the jury returned a verdict for the plaintiff for $1,420, with interest from March 7th, 1883. The defendant made a motion for a new trial on the several grounds set out therein, which motion was overruled by the court, and he excepted.

1. One of the points made in the motion for a new trial is, that the court erred in overruling the demurrers to the declaration. We have repeatedly decided that the overruling of the demurrer to the declaration is not a good ground in a motion for a new trial. If we were called upon, however, to decide upon these demurrers, we would say that the court did right in overruling them. We do not think that a public administrator, when he resigns that office, thereby resigns his administratorship upon an estate of which he has been appointed administrator, but that he continues as administrator on that particular estate until he is removed by the ordinary, or resigns the administration upon that particular estate and his resignation is accepted by the ordinary. We also think that he had a right to bring this action for damages on the breach of this bond. It is a personal action which survived his intestate, and should have been brought by her administrator, and not by her heirs at law.

2. We think the exception taken to the charge of the

court in the 5th ground of the motion, is well-founded. The court instructed the jury, in substance, that if Gibson had made to Mrs. Wimberly a bond for titles to the Jones place, and after her death her husband took charge of said land and made crops thereon, and with the proceeds of this crop paid the balance due on the land from Mrs. Wimberly to Gibson, this was a payment by the heirs of Mrs. Wimberly, and if Gibson refused to make her heirs the deed to the lands, this was a breach of his bond, and her adminstrator could recover the whole amount of damages with interest. Under the facts of this case, we think this instruction was erroneous. It appears from the evidence that Mrs. Wimberly, when she died, owed Gibson $187.15 on the Jones place, having paid $312.85. After her death, Wimberly, by his own labor and that of his minor children, made a crop and paid this balance. The court instructed the jury that the proceeds of this crop belonged to the estate of Mrs. Wimberly. We do not think so. After her death, her husband and children were her heirs at law; and there being no administrator at that time, had a right to take possession of these lands and to work the same. *Johnson vs. Johnson*, 80 *Ga.* 260. All the children being minors, their father was entitled to their labor, and whatever was made by their labor and his belonged to him, subject, of course, to the charge against him for rent. The facts alleged in this declaration, properly construed, make this an equitable action, and the administrator is only entitled to recover upon equitable principles. If, therefore, with the proceeds of this crop, the father paid the $187.15, the balance of the purchase money of the Jones place, the administrator, in an equitable suit against Gibson for the breach of the bond, would not, in our opinion, be entitled to recover the whole amount as charged by the court, but should

recover in proportion to the amount which had been paid by his intestate; or, in other words, the amount to be apportioned is the value of the land at the time of the breach. The share of the plaintiff in that value is regulated by the proportion of the purchase money which the plaintiff's intestate paid, as compared with what she did not pay. Thus, the whole purchase money being $500 and she having paid $312, the recovery should be 312–500ths of the value of the land at the time of the breach, with interest thereon from the time of the breach.

3. It appears also that, before the death of Mrs. Wimberly, she gave her note to Gibson for $300, which she was to take up in trade, but when she died she had only taken up $30. It seems, however, that Gibson kept the note and allowed Wimberly, the husband, to take up the balance, $270, and that Wimberly afterwards paid Gibson the whole $300. In a suit for the breach of the bond given to reconvey the Johnson land, we do not think that the estate of Mrs. Wimberly should be charged with more than $30; $270 was clearly the debt of Wimberly, the husband. Gibson had no right to charge that amount to the estate of Mrs. Wimberly; nor ought he to have credit for it in this suit. All the credit that he should be allowed is the $30 which Mrs. Wimberly had taken up before she died. Mrs. Wimberly not having purchased the Johnson land from Gibson, but having made him a deed thereto to secure a note of $300, and having drawn only $30 on the note, we think that the measure of damages in this branch of the case, under the facts disclosed by this record, is the value of the premises at the time of the breach of the bond, with interest thereon, less the $30 to be deducted therefrom. With this rule applied by the court on the next trial, we do

Gibson *vs.* Carreker, administrator.

not think there will be any difficulty in arriving at a just and proper verdict.

4. The general rule as to the necessity of a demand in cases like this, is as stated by the court in its charge to the jury. In this case, however, the plaintiff in his declaration alleged a demand, and he should be compelled to stand on that allegation, or to amend his declaration, if he is unable to prove the demand, and allege some sufficient excuse why no demand was made. Of course if the defendant had put it out of his power, before this suit was brought, to comply with the demand, and this should be alleged in the declaration, it would be sufficient.

5. The jury found in their verdict $1,420, with interest from March 7th, 1883. The plaintiff in error excepted to this form of verdict. While we would not grant a new trial in this case if this were the only error, yet as it is complained of in the motion for a new trial, we will say that the form of the verdict is wrong. This is not a suit for a debt where it is sought to recover principal and interest. It is a suit for damages by reason of the breach of a bond; and while the code says (§2949) that "upon a breach of a bond for title to land, the value of the premises at the time of the breach, with interest thereon, should be the measure of damages," it does not mean thereby that the two amounts shall be returned separately by the jury. It means that the jury shall ascertain the value of the land at the time of the breach, and calculate interest thereon from the time of the breach to the verdict, and return the total amount *in solido* as a measure of damages. The plaintiff is entitled to recover the value of the land at the time the defendant refuses to make title, and as additional damages, the interest on that value up to the time of the verdict, and the whole

should be returned by the jury in one amount as damages. This, in our opinion, is the proper form of verdict in such a case as this.

Judgment reversed.