## 4448. PETERSON *v.* HARPER.

1. The judge erred in directing the verdict.

( *a* ) The maker of a bond for title, wherein he binds himself to execute a deed upon the payment of certain notes, is not required to execute a deed in pursuance of his bond until the bond is surrendered, unless it is shown that the bond is lost or destroyed and can not afterwards be enforced against him.

( *b* ) The assignee of a bond for title acquires all the rights and equities of the assignor thereunder.

2. One who has executed a bond for title, obligating himself to convey certain land to a named obligee or his assigns, can not, unless the bond has been surrendered to him or is not enforceable against him, convey the land to a person other than the obligee or his assigns without breaching the bond, and the fact that the bond has been assigned by the obligee to a third person will not relieve the obligor from any of the liabilities resulting from the breach.

3. Where the maker of a bond for title to land, without requiring its surrender and without inquiring whether it has been transferred or destroyed, executes and delivers a deed to a third person in disregard of the obligation assumed in the bond, and an assignee of the bond sues him for the breach of his obligation, he can not defend upon the ground that the assignee knew of the execution of the deed, unless he can show in addition that the assignee acquiesced in or consented to the execution of the deed.

DECIDED JULY 22, 1913.

Action on contract; from city court of Ocilla—Judge Oxford. August 26, 1912.

*Newbern & Meeks, F. W. Dart,* for plaintiff.

*H. J. Quincey, J. J. Walker,* for defendant.

RUSSELL, J.  Peterson brought suit against Henry Harper for the breach of a bond for title.  The court directed a verdict in favor of the defendant, and the plaintiff excepts.  According to the evidence, the defendant executed to Stone on July 25, 1908, the bond for title which appears in the record, whereby he obligated himself to convey certain land to Stone or his assigns, upon the payment of two promissory notes therein specified, amounting to something over $300.  The bond for title does not contain a stipulation to the effect that time is of the essence of the contract, or confer power

upon the holder of the notes to sell the land either at public or private sale. The land was worth from $2,500 to $3,000. The defendant testified that he had no other interest in the land than as security for the debt evidenced by the notes. One of the notes fell due January 1, 1909, and the other January 1, 1910. On January 12, 1910, neither note having been paid, he made to L. C. Harper a warranty deed conveying the land described in the bond for titles. On December 20, 1910, Stone, the obligee in the bond for title, transferred it to Peterson, the plaintiff. Stone had, on December 31, 1908, executed a deed to the same land to Annie Harper. Stone knew, before he transferred to Peterson the bond for title, that the defendant had already deeded the land to L. C. Harper, but Peterson testified that he (Peterson) did not know this, and there is no testimony that he actually knew this when he took the assignment of the bond for title. Peterson was charged with constructive notice, however, as it appears from the record that the defendant's deed to L. C. Harper was recorded before the bond for title was formally assigned to Peterson. The foregoing were the material facts developed on the investigation in the court below. Any apparent conflict in the testimony related to minor matters and is immaterial to a consideration of the substantial questions presented. It appears also, without contradiction, that nearly a year before the formal assignment of the bond for title from Stone to Peterson, Peterson paid to Stone the full consideration for his equity in the premises, upon his promise to assign the bond for title, which Stone did not have with him at that time, and it was uncontradicted that the delay in the execution of the assignment was due wholly to Stone, whom Peterson frequently requested to formally execute the assignment. Of course this testimony does not affect the rights of the parties (because necessarily the assignment had to be in writing), but it does show that the assignment was not fraudulent and was based upon a valuable consideration.

Since it appeared prima facie that there was a breach of the bond for title, our inquiry must necessarily be confined to ascertaining whether the reasons given by Harper for actually disregarding his obligation are sufficient to relieve him from the liability to which he was subjected prima facie when the plaintiff proved the execution and assignment of the bond, and that Harper, as obligor,

had placed himself in a position where he could not comply with its terms. It was not necessary for Peterson to demand that Harper comply with his obligation; for the evidence showed that the defendant (as alleged in the petition) had put it out. of his power, before the suit was brought, to comply with such a demand. *Gibson* v. *Carreker,* 82 *Ga.* 53 (9 S. E. 124). The testimony as to the sale by Stone to Mrs. Annie Harper cuts no figure in the case, because there is no evidence that Stone ever assigned his bond for title to Mrs. Harper, or that he, in writing, conveyed to her his interest in this land.

Even if a written instrument. apart from the assignment and transfer of the bond for title had been introduced, it would not necessarily have relieved the defendant from liability to Peterson, for there is no evidence that at the time he executed the deed to L. C. Harper he had any reason to believe that his bond for title was not still outstanding (perhaps in the hands of an innocent purchaser of Stone's equitable interest), and he neither inquired as to its whereabouts nor demanded its surrender as a condition precedent to the execution of this deed. He certainly knew, when he executed the deed to L. C. Harper, that he had given a bond for title to Stone, covering the same tract of land. He knew that he could not be required to give a deed in pursuance of that bond until it was surrendered, or until it was satisfactorily shown that he could not in any event be liable in future upon the obligation.

The maker of a bond for titles, wherein he binds himself to execute a deed to the obligee named in the bond upon the payment of certain notes, is not required to execute a deed in pursuance of his bond until the bond is surrendered, unless it is shown that the bond is lost or destroyed and can not afterwards be enforced against him. *Hardin* v. *Neal Loan & Banking Co.,* 125 *Ga.* 820 (54 S. E. 755). The defendant seems to have recognized this principle, because there was testimony to the effect that Stone, the holder of the bond, agreed that he should execute the deed; but the judge could not direct a verdict upon this testimony, since it was contradictd by Stone; and it was for the jury to say what was the truth as to this point. The facts of the instant case demonsrate the wisdom of the ruling of the Supreme Court in the *Hardin* case, supra; because, were any other rule adopted than that of requiring the maker of a bond for title to be certain that that obligation has

been legally canceled and its binding force avoided, many disasters in daily commercial transactions would ensue. A bond for title is evidence that the obligee therein named has an equitable interest, in some amount, in the premises therein described, which he can sell or pledge as security for debt, and daily many transactions of this kind occur, in fact so many that the legislature has seen fit to provide for the recording of bonds for title; and the courts have uniformly held that the rights of the holders of a bond for title must be regarded and respected by third persons, as well as by the obligor. The holder of a bond for title has an equitable interest in the land which may be perfected without the execution of a deed, by payment of the purchase-price in full, either by the original obligee or by his assignee. He can not be deprived of this equitable interest through a sale of the land by the original vendor, even if the purchase-money notes are not paid promptly at maturity, unless it be expressly so stipulated in the notes or in the bond itself. *Buck* v. *Duvall*, 11 *Ga. App.* 853 (76 S. E. 1053). He can proceed against a trespasser upon the premises, although he has not paid the purchase-price in full, and even though his notes are past due. Prima facie, at least, one who, in disregard of a bond for title, in which he has obligated himself to convey the premises therein described, conveys them to another has breached his bond, and it devolves upon him to disclose why he should be relieved from this apparent liability.

That the assignee of a bond for title acquires all the rights and equities to which the assignor was entitled thereunder is well settled. *Walker* v. *Maddox*, 105 *Ga.* 253 (2), 255 (31 S. E. 165); *Burney Tailoring Co.* v. *Cuzzort*, 132 *Ga.* 852 (65 S. E. 140). Therefore the bond for title, with the assignment entered thereon, entitled Peterson to recover if the jury believed the testimony of Stone that he did not consent for the defendant to execute the deed to L. C. Harper, and that in fact he had no knowledge of it.

The evidence is undisputed that Peterson had no actual knowledge, at the time of the transfer by Stone of the bond for title, that the defendant had executed a deed to L. C. Harper. It is insisted, however, that Stone knew, before he executed his assignment to Peterson, that the defendant had executed and delivered this deed; and, as the assignee of the bond could not get more than his assignor had, and as Stone had nothing, Peterson got nothing under

the bond for title. We consider this argument as without. force, for the reason that, even if it had been shown that Peterson, at the time he purchased Stone's equitable interest in the land and had the bond for title assigned to him, knew that the defendant had executed a deed to L. C. Harper, his right to recover for the breach of the bond would not be defeated, unless he further knew, or had reason to know, that Stone had consented to the execution of the deed. Intrinsically there is no difference between actual and constructive notice. The effect of each and both is to show that the person whom it is sought to charge with notice had knowledge of a particular fact. When this notice is implied by law from certain conditions, it is called "constructive notice," and dispenses with the necessity of proof of actual knowledge; whereas, to impute actual notice, the proof must show that the party whom it is sought to charge with notice actually knew of the existence of the fact or condition in question. One who has executed an obligation to make title to land can not escape liability for breach of the bond merely because the obligee (who is the owner of an equitable interest in the land) knew it was being breached. Of course, if the obligor executed a deed with the consent or assent of the obligee, or of his assignee, this would be a perfect defense. But it would never do to hold that the voluntary act of the obligor in violating his obligation, without the consent or over the protest of the holder of the bond for title, would relieve him from liability on the bond merely because it was done in the presence of the obligee. In such a case knowledge is not the equivalent of either assent or consent. If the jury trying the case believed that Stone consented for the defendant to make the deed, and further believed that he. did not execute the deed until he had taken proper means to ascertain that the bond could never in future subject him to liability, then it might be possible that Peterson could not recover. But in the absence of such proof the defendant could not, in defense of his apparent breach of the bond, set up mere knowledge of his act in executing the deed, on the part of either Stone or his assignee. The proof would have to show assent or consent in addition to knowledge. Where nothing more is shown than that the obligee in the. bond for title, or his assignee, had knowledge of the fact that the maker of the bond executed a deed in violation of his obligation, this proof constitutes no defense to the breach

of the bond; and it is immaterial whether the knowledge is actual or constructive. All actions for breaches of bonds for title could be prevented or defeated if the law were to the contrary; for then, if the maker of a bond wished to avoid it, it would only be necessary to put himself in the presence of the obligee, and, after calling the obligee's attention, to deliver to some third person in his presence a deed, previously executed by the obligor, conveying to the third person the premises described in the bond. Where the maker of a bond for title, without requiring its surrender and without inquiring whether it has been transferred or destroyed, executes and delivers a deed to a third person, in disregard of the obligation of the bond, and an assignee of the bond sues him for the breach of his obligation, he can not defend upon the ground that the assignee knew of the execution of the deed, unless he can show in addition that the assignee acquiesced in or consented to the execution of the deed.　　　　　*Judgment reversed.*