Ray and others *vs.* The Justices of the Inferior Court of Macon Co.

---

No. 43.—GEORGE RAY, administrator, and others, plaintiffs in error, *vs.* THE JUSTICES OF THE INFERIOR COURT of MACON COUNTY, defendants.

[1.] A witness who is liable to an action by the party for whom he is called, in case that party should not recover, is incompetent to testify, without a release.

[2.] In an action by the present guardian, against the administrator of the former guardian, and his securities on the bond, the plaintiff must show, *affirmatively*, some act of waste or mal-administration by his predecessor during his life; and the bare *reception* of money for his wards, without further proof of default, is not, *per se*, a breach of the bond.

[3.] The Act of 1820, authorising securities to be joined with the principal, in suits upon executor's, administrator's and guardian's bonds, considered.

[4.] In an action by the present guardian against the administrator of a deceased guardian and his securities, upon their bond, in which the breach alleged, is the receipt of three several sums of money by the former guardian, which he had appropriated to his own use, the measure of damages is the aggregate of principal and accruing interest.

[5.] The Act of 1814, requiring the amount of principal and interest to be stated, separately, in judgments, applies to suits on promissory notes, and other special contracts bearing interest, and not to cases where the recovery is in damages.

Ray and others *vs.* The Justices of the Inferior Court of Macon Co.

Debt on Bond, in Houston Superior Court.   Tried before Judge FLOYD, October Term, 1848.

Suit was commenced in the Superior Court of Houston County, by the Justices of the Inferior Court of said County, for the use of Jesse M. Pinkston, guardian of the minor heirs of Green B. Pinkston, deceased, upon the bond of Joshua Taylor, a former guardian, now deceased.   The suit was instituted against George Ray, as administrator of said Taylor, and George Ray and Lawson Henderson, as sureties.   The breach alleged was, that the said guardian " did not take good and lawful care of the property of the said orphans, his said wards, according to the laws of this State ; nor did he, annually, make a just and true return of all or any of his actings and doings in the premises, unto the said Court of Ordinary, but on the contrary thereof, your petitioners say that the said Joshua Taylor, as such guardian, did receive from the legal representatives of Green B. Pinkston, deceased, (their father,) a large sum of money belonging to his said wards, as heirs at law of said Green B. to wit: the sum of seven hundred and ninety dollars, which sum of money the said Joshua Taylor wasted, converted and disposed of to his own use," &c.

At the October Term, 1848, upon the trial, the plaintiffs gave in evidence the bond, and then offered to prove certain receipts and the payment of the money therein specified, by Nathan G. Lewis, the administrator of Green B. Pinkston.   The defendant's counsel objected to his testifying, on the ground that he was interested in relieving himself from responsibility, which objection was overruled, and defendants excepted.   The receipts were then given in evidence, showing the receipt by the guardian, of $747, from the administrator of G. B. Pinkston.

Plaintiffs here closed their case, whereupon defendant's counsel moved for a nonsuit—

1. Because there was no evidence of a demand from the guardian or his administrator, to account for the fund, nor of their refusal to pay.

2. Because the plaintiffs showed no settlement of the guardian's accounts, either by the guardian or by the decree or judgment of a Court of competent jurisdiction, and that there is no breach of the bond until such accounting has been had.

3. Because there is no evidence of the breach of the bond sued on.

Which motion was overruled by the Court, and defendant excepted.

The Court charged the Jury, that they must find for the plaintiffs; that they should ascertain the amount of interest on the payments shown, and adding the interest to the principal, find the aggregate amount as damages.

To which charge defendants excepted; and on these exceptions error has been assigned.

JOHN M. GILES, for plaintiffs in error.

E. WARREN, for defendants.

JOHN M. GILES, for plaintiffs in error, submitted the following brief:

1. Lewis, the administrator, was incompetent to prove the payment, by himself, of the trust fund to the guardian. In all cases when the testimony of the witness adduced by the plaintiff, would discharge the witness from the plaintiff's demand, by establishing it against the defendant, he is incompetent. 1 *Greenl. Ev.* §396, note. *Emerton vs. Andrews,* 4 *Mass.* 653. *Hodson et al. vs. Marshall,* 7 *Carr. & P.* 16, (32 *Eng. C. L. R.* 421.) *Nisbet vs. Lawson,* 1 *Kelly's R.* 282, '3.

2. A demand of the guardian to account, made by some one authorized to receive the fund, and a failure or refusal to account by the guardian, should have been shown. There was no attempt to show a waste by the guardian in his life-time; but the proof relied on was merely the evidence of the reception of the fund by him, and it was sought, by this evidence, to cast the *onus* upon his administrator and securities to show what had become of the fund. This is no evidence of a breach—the plaintiffs below should have shown affirmatively a breach of the bond. *Justices of the Inferior Court vs. Woods & Vason,* 1 *Kelly's R.* 88. *Bryant, guardian, and others vs. Owen and Wife,* 1 *Kelly's R.* 374.

3. There was no decree or judgment obtained against the guar-

306     SUPREME COURT OF GEORGIA.

Ray and others *vs.* The Justices of the Inferior Court of Macon Co.

dian, settling his accounts and ascertaining the amount due to the wards, and until such judgment or decree, no writ can be maintained or recovery had against the securities for the failure of the guardian to account; their liability being *ultimate*, not *primary.* *Stilwell vs. Mills,* 19 *Johns. R.* 304. *Anderson vs. Maddox and others,* 3 *McCord's R.* 237. *Salisbury vs. Van Hoesen,* 3 *Hill's N. Y. R.* 77. *Wallace ads. James,* 4 *McCord's R.* 121. The Statute, (*Prince's Digest,* 445,) is relied on to show that this is not now the rule on this subject in this State; but that Statute does not expressly, nor by any just construction, have any effect upon the rule here contended for. See *Cameron et al. vs. Inferior Court,* (1 *Kelly's R.* 37,) where *Warner, J.* cites and approves of the following cases: *James vs. Anderson,* 4 *McCord's R.* 113. *Braxton vs. Winslow,* 1 *Washington's Va. R.* 31. If the securities of an administrator are only ultimately and not primarily liable, so are the securities of a guardian.

4. There was no breach of the bond shown. *See authorities cited to the second point.*

5. The charge of the Court, directing the Jury to add principal and interest together, and find the aggregate sum as damages, was contrary to our Statute regulating interest on judgments. *Prince's Digest,* 294, '5.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] Was Nathan G. Lewis a competent witness to prove the payment of $747, by himself, as administrator of Green B. Pinkston, deceased, to Joshua Taylor, the former guardian of the minor children of his intestate? To allow it would be to permit the witness to discharge himself of his liability to the heirs of the estate which he represents—for if he has not paid over this money, he is still responsible to them for it. This principle we consider was settled in *Nisbet vs. Lawson,* 1 *Kelly,* 275. The doctrine there ruled was, that a witness who is liable to an action by the party for whom he is called, in case that party should not recover, is incompetent without a release.

[2.] This was an action by the present guardian against the administrator of the former guardian and his securities, upon their bond; and the only evidence adduced to support it, was the receipt of certain sums of money by the deceased guardian. Is this, *per se,* a breach of the bond?

Ray and others *vs.* The Justices of the Inferior Court of Macon Co.

This point has been several times discussed before this Court. In the *Justices of the Inferior Court vs. Woods & Vason*, (1 *Kelly*, 84,) it was distinctly held, " that the *reception* of money by the guardian is no *breach* of his bond ; it is his *duty* to receive it ;" " that the burden of proof is on the plaintiff to show *affirmatively* some act of waste or mal-administration on the part of the guardian ;" and that " the reception of the money by the guardian would not be sufficient to sustain a suit on the bond, without farther proof to establish a forfeiture." And in *Bryant, guardian, &c.* and *Beall, executor of Pye, vs. Owen and Wife*, (1 *Kelly*, 355,) this Court say, " The law makes it the duty of the guardian to inquire into and take charge of the estate of his ward ; to *receive* and *keep* his effects. If the guardian is not appointed for this purpose, then the appointment of a guardian at all, is an act of redeemless folly. Moreover, the Statute of 12 *Char. II.* makes it the duty of guardians to take the *custody, tuition, and management of the goods, chattels and personal estate* of children committed to their care. This Statute is of force in Georgia. *Schley's Digest*, 243. We think then, it is established by these views, and the authorities which sustain them, that it is the duty of the guardian to *receive* the effects of the ward, and if he fails to collect and *receive* them, he commits waste. If these things are so, can the *receipt* of the effects be evidence of waste at the same time ? The thing is not only unreasonable but absurd."

Thus it will be perceived, that the question under consideration is most fully covered by the previous adjudications of this Court. In this case, Joshua Taylor, the former guardian, *received* the money and died. He alone was entitled to its custody, to the time of his death. It does not appear but that it came into the hands of his administrator, and if so, he and his securities, and not the securities of Taylor, are liable for it.

It may be enough for the present disposition of this point to stop here, but I feel it due to myself to *intimate*, that if necessary, I should be prepared to maintain that, ordinarily at least, suit cannot be brought on an administrator's or guardian's bond against the sureties, until the principal has been first called to account, either before the Ordinary or some other Court of competent jurisdiction.

[3.] I am aware that the Act of 1820, is supposed to control this matter. I once entertained that opinion myself—I now think differently. That Statute was passed to authorize suits to be instituted against securities to executor's, administrator's and guardian's bonds, in the same action with the principal thereto. The preamble recites, that it had been decided by the Superior Courts of this State, that suit cannot be instituted against any security or securities to any executor's, administrator's or guardian's bond, until the principal or principals to such bond shall have been sued to insolvency, whereby great injury to the interest of heirs, distributees and others may accrue. For remedy whereof it is provided, that securities to all such bonds shall be considered as joint, or joint and several obligors (as the case may be) with the principals in said bond, so as to authorize any heirs or others concerned, to sue principal and security in the same action. It is farther provided, that the principal, if within the State, shall be first sued, or shall be joined with the security, and if the latter be distinguished as principal, that the execution shall issue against the parties accordingly, and be first levied on the property of the principal, and if that is insufficient to satisfy it, it may then be collected out of the security, who is to have the use and control thereof, for the purposes of remuneration. *Prince,* 445.

What was the mischief which the Legislature intended to correct? The Courts in this State, it seems, had decided, according to what I take to be sound law, that you had first to get a judgment against the executor, administrator or guardian, *as such,* and upon a return of *nulla bona* to that, the heir, distributee, creditor or other person concerned, had next to proceed against the representative and prove that he had wasted the assets, before the party would be entitled to an action against the sureties. The first judgment was *de bonis testatoris*—the second, *de bonis propriis.* *Lining vs. Giles,* 2 *Const. R. Tread.* 720. *Braxton vs. Spotsylvania,* 1 *Wash. Va. R.* 31. *Call vs. Ruffin,* 1 *Call. R.* 333, *and Gordon's Administrators vs. Justices of Frederick,* 1 *Munf.* 1. *Lyles vs. Caldwell,* 3 *McCord,* 225. *Ordinary vs. Maddox, Ib.* 237. *Cureton vs. Shettor, Ib.* 412. *Magwood vs. Butler, Harper's C. R.* 264. *Glenn vs. Conner, Ib.* 267. *Wallace vs. James,* 4 *McCord,* 121.

The Act of 1820, then, intended to save one suit, and to allow the securities to be joined with the principal, not in the *first* in-

stance, when he is proceeded against *representatively*, but in the *next* action, when he is charged *personally* with the *devastavit*. And we take this to be its true intent and meaning.

But I will not pursue this subject farther. In *Cameron vs. the Justices of the Inferior Court of Richmond County*, (1 *Kelly*, 36,) the same views were strongly intimated by this Court. I will not say that a case might not be made, either in Equity or at Common Law, where this order of proceeding would not be dispensed with. And of one thing I am pretty clear, namely : that the trustee might be summoned before the Court of Ordinary, whose peculiar province it is to take cognizance of such matters, and such proceedings be there had, as would stand in lieu of a formal suit against the party, and lay the ground work for the subsequent action on the bond.

[4.] The Court charged the Jury, that in making up their verdict, they should calculate the interest that had accrued on the several sums paid the former guardian, add this to the principal, and that the aggregate amount would be the measure of damages ; and this instruction is complained of.

*Nisbet and Lawson,* already cited, is a precedent to control this exception. This Court there held, and we think rightly, that in an action of assumpsit by the principal against his attorney, for money had and received, that the measure of damages was the amount of money collected, with the interest thereon from the time it was received.

[5.] It is assumed in the argument, that this rule would contravene the second section of the Act of 1814, to establish a uniform mode of calculating interest in this State, and to prevent the collection of compound interest, and which declares that, " in all cases where judgments may hereafter be obtained, all such judgments shall be entered up for the principal sum due, with the interest, but no part of such judgment shall bear interest, except the principal which may be due on the *original debt*, any law, usage, custom or practice to the contrary notwithstanding." *Prince*, 294, 295.

It is quite manifest that this clause of the Statute refers to judgments which are obtained on promissory notes and other liquidated demands bearing interest. It speaks of the "*original debt.*" It never could have been intended to apply to actions on penal bonds or assumpsit, where the recovery is in damages. Suppose

*trover* were brought for a note which had been converted by the defendant? It will not be contended, I apprehend, that the judgment should be for so much principal and so much interest. As in debt on a penal bond and assumpsit, the finding would be for a gross amount as damages. We approve, therefore, of the directions given to the Jury by the presiding Judge, as to the measure of damages; but differing as we do from the judgment rendered at the Circuit on the other two points, it must be reversed and the cause remanded.