Hardwick and another *vs.* Thomas *et al*

No. 38.—Wm. M. Hardwick and Thomas Gilbert, plaintiffs in error, *vs.* James Thomas and others, defendants in error.

[1.] What is usually known as a creditor's bill will lie in Georgia.

[2.] If there has been a fraudulent sale of the effects of the estate by collusion between the removed executor or administrator and the purchaser, the administrator can, at Common Law, proceed against the removed executor or administrator and the purchaser, and set aside such sale, and collect in the effects so fraudulently sold.

[3.] When an executor or' administrator is removed, and an administrator *de bonis non* is appointed, at Common Law, he can only administer upon the estate unadministered, and cannot 'call the removed executor or administrator to account.

[4.] By the Act of 1845, the removed executor or administrator is made liable to account with the administrator *de bonis non*, and he may proceed against him and compel him to account.

[5.] Since the Act of 1845, the creditors cannot sue to collect in the assets of the estate and cause them to be applied, when there is an administrator *de bonis non*, or call the removed executor or administrator to account, unless the administrator *de bonis non* is insolvent, or colludes with the debtors, or refuses to sue; or unless shey show some other ground which will warrant a Court of Chancery to interfere in their behalf.

[6.] Where in such a suit, they rely upon the refusal of the administrator *de bonis non* to sue, they must expressly charge that he has so refused after a request that he should institute suit, or charge such facts, as show such neglect or omission to sue, as raise a presumption that he has refused to sue, and that their just rights as creditors, are endangered.

[7.] An averment "that he has not brought suit, although requested so to do," held not to be sufficient.

In Equity, in Stewart Superior Court. Decision on demurrer, by Judge Iverson, May Term, 1851.

Micajah Thomas, a judgment creditor of Darius Gilbert, deceased, and others who were creditors by note, filed a bill in behalf of themselves and other creditors of said Gilbert, against Thomas Gilbert and William M. Hardwick, charging among other things, that Darius Gilbert died in the County of Hancock, testate, leaving Wm. M. Hardwick and Thomas Gilbert as his executors; that Hardwick alone qualified, although in all of his

transactions as executor, the bill charged he was counselled and directed by Thomas Gilbert; that the estate, real and personal, that went into the hands of said Hardwick, as executor, was worth at least the sum of $75,000; that among other things, was a valuable tract of land, lying in Baker County, worth $20,-000, all of the purchase money for which, had not been paid by said Darius Gilbert; that the executor, by his bad and fraudulent management, failed to pay up the balance, and the land was sold by the Sheriff, for the nominal sum of $200; that instead of selling the property and paying the debts within twelve months, he failed to sell the property until more than twelve months had elapsed, and when many suits against the estate had been prosecuted to judgment; that when the negroes were exposed to sale, there was very little specie or specie funds in Stewart County; that the advertisement gave no intimation to persons wishing to purchase, that the sale would be for cash, instead of on credit for twelve months, as is usual and almost universal in sales by executors and administrators; that on the day of sale, and by mutual agreement between Thomas Gilbert and said Hardwick, it was determined that said property should be put up for cash and payment demanded in specie; and at the same time it was privately agreed and understood between them, that Gilbert might bid on credit, thereby enabling him to purchase the property at a reduced price, on the promise of Gilbert that the purchases thus made should enure to the benefit of the sister of said Hardwick, the widow of said Darius Gilbert, deceased; that many of the creditors attended the sale and protested against the terms; and also proposed to purchase on their claims, which proposition was rejected, unless they would agree to settle and receipt the claim in full, by purchasing to the amount of fifty cents in the dollar; that by these means the property was sold at prices much below the real value, and Thomas Gilbert became the purchaser of most of the negroes, and Hardwick himself, and by his agents, became purchaser of others; that Gilbert did not pay the cash, nor had he paid in full when Hardwick was removed from his trust as executor; that Gilbert by misrepresentations to Hardwick himself, induced

him to make titles to the property without receiving the pur-
chase money, and has since refused to pay it at all; that not-
withstanding property to the amount of $20,000 was thus sold,
yet Hardwick and Gilbert with the funds in their hands, permitted
lands in Hancock County, worth $10,000, as well as the land in
Baker, to be sold by the Sheriff under execution at prices ruinous
to the estate; that Hardwick, under the advice of Gilbert, fraudu-
lently procured himself to be dismissed as executor, in September
in 1843, and that at January Term, 1847, administration *de
bonis non, cum, &c.* was granted to Henry Rogers of Hancock
County; that Rogers has collected none of the assets, and " has
not brought suit against Hardwick and Gilbert, although request-
ed so to do;" that Hardwick is insolvent; that letters testa-
mentary were granted first in February, 1841; that none of
the complainants were present at the fraudulent sale com-
plained of, (living at a distance from Stewart County,) and
that they never heard of the fraud until within twelve months
previous to the year 1847, when they filed their bill in Hancock
Superior Court, against Hardwick, Gilbert and Rogers, which
bill, in April, 1848, they were compelled to dismiss. This
bill was filed January, 1849. The prayer of the bill was
for an account by Gilbert and Hardwick, and to set aside the
fraudulent sales complained of.

To this bill, Thomas Gilbert, by his counsel, demurred, on the
following grounds:

1st. For a want of Equity. 2d. Because Henry Rogers,
administrator, &c. is a necessary party, and not made so by the
bill.

3d. Because there is no privity between the complainants and
defendant, Gilbert.

4th. Because complainants are not the proper parties to seek
this discovery and relief from defendant, but Rogers, administra-
tor, &c. is the proper party.

5th. For multifariousness.

6th. The Statute of Limitations.

7th. That Gilbert has been in possession of the negroes more

than four years, without any notice of the existence of any judgment.

8th. Because of a misjoinder of complainants, there being no joint right, but each having a separate right, independent of the others.

9th. Because none of the complainants are judgment creditors, except Micajah Thomas.

10th. Because the bill is indefinite, vague and uncertain.

Upon hearing the demurrer, the Court overruled all the grounds except the second, which was sustained. To this decision of the Court overruling the demurrer, counsel for defendants excepted, and the errors are assigned thereon.

BENNING and HOLT, for plaintiff in error.

THOMAS & DOWNING and B. HILL, for defendant.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] We do not doubt but that what is usually called a creditor's bill in a proper case made, will lie in Georgia. The contrary was assumed in the argument of this and other cases at the present term. The point being overruled in a previous case, was not pressed in this. The argument to sustain our opinion on this head, will doubtless appear in its proper place.

The *demurrer* to this bill must be sustained on one vital point. On that account, we render no judgment upon the other specifications.

[2.] The bill makes, in my judgment, a strong case for relief. If the facts charged be true, it would be a just reproach to a Court of Chancery, if it could afford no relief. Whilst this is so, it is at the same time too clear for doubt, that these complainants cannot recover on this bill. The bill is filed by creditors of Darius Gilbert, deceased, to compel the removed executor, Hardwick, and one Thomas Gilbert, to account for certain property belonging to the testator's estate, which fraudulently came into the hands of Thomas Gilbert, with the assent and through

the collusion of Hardwick, before he was removed. The charge of fraudulent combination between Hardwick and Gilbert, is made with quite sufficient certainty. Moreover, Hardwick is charged to be insolvent. The complainants seek the aid of a Court of Equity, to get at this property in the hands of Gilbert. That the property of this estate in the hands of any one who has paid nothing for it, should be applied to the payment of its just debts, is incontrovertible. But the difficulty here is, that the creditors, according to their own averments, are not entitled to sue. They are not the parties entitled to sue, but under special circumstances, which their bill does not show to exist. As a general rule, creditors cannot sue the debtors of an estate, nor can a debtor be made a defendant to a bill, at the instance of a creditor against the executor, unless there be collusion, insolvency, a refusal to proceed to collect the assets, or some other special facts to warrant it. 3 *Kelly,* 581, *and authorities there cited.* It is the privilege and the duty of the executor and administrator, to collect debts, pay debts, distribute and finally settle the estate. The law devolves this trust upon them, and they must execute it at the peril of a personal liability. They are as well made chargeable by acts of omission as of commission. And if an executor or administrator neglects to bring suit to recover assets, which are in law the property of the estate, and which are within his cognizance, he is guilty of a devastavit. Now, the law does not divide the power over the estate between him and the creditors, and thus lessen his means of executing his trust. Nor will it relieve him from responsibility, by dividing it with others. Much less will it hold him to the responsibility of a proper administration, when others not under his control are authorized to take part in the administration. For very good reason, therefore, the law will not permit the creditors to come in between the representative and third persons who are debtors to the estate, or who hold possession of property belonging to the estate, and collect the debts, and appropriate the property in satisfaction of 'their claims. Such a right on their part, would disorganize the beautiful system of the law of administration. It would not, with such right, as now it confessed-

Hardwick and another *vs.* Thomas *et al.*

ly does, work justly, so far as the executor or administrator is concerned, nor safely, so far as creditors, legatees and distributees are concerned. But there are exceptions to the rule. If the representative is insolvent, so as to endanger the funds of the estate when collected, or if he colludes with the debtors to defraud the estate, or if, being required to sue to collect them in, he refuses to do so ; or if, on any other account, the creditors are, in the view of a Court of Chancery, likely to lose their debts unless permitted to sue, then are they admitted into a Court of Chancery in their own names and one side of the legal representation, for the purpose of collecting and applying assets. They are so admitted, only upon an exhibition of the grounds which bring them within any of the exceptions to the rule. *That is, they must make a proper case, or they will not be heard.* These principles are applicable to this case. Hardwick, the only qualified executor to the will of Darius Gilbert, was removed by the judgment of the Court of Ordinary, and Henry Rogers was appointed administrator *de bonis non*, with the will annexed.

[3.] At Common Law, Rogers became the representative of the estate, with full powers to settle it so far as it was unadministered, but without power at Common Law to call the removed executor to account. 1 *Kelly*, 78. 5 *Geo. Rep.* 58. Even at Common Law, however, if the removed executor has colluded with a purchaser at a sale, as is charged in this bill, I do not doubt but that the administrator *de bonis non*, could pursue the property and collect it in. A fraudulent sale could not be held an administration by the removed executor. 5 *Geo. Rep.* 59.

[4.] However, by the Act of 1845, it is expressly made the duty of the removed executor or administrator, to account to the administrator *de bonis non*. *Cobb's New Dig.* 335. By the combined operation, therefore, of the Common Law and the Act of 1845, the administrator *de bonis non*, Mr. Rogers, was the representative of Darius Gilbert's estate, with full power to sue for the property in the hands of Thomas Gilbert ; to have the sale to him set aside ; to collect all debts due to the estate, and to call Hardwick, the removed executor, to account.

[5.] Indeed, all this he is bound to do. The creditors, therefore, have no better right to sue in this case, than they would have in case of an unremoved, living executor or administrator. They are not entitled to sue unless Rogers is insolvent, or colludes with Thomas Gilbert, or refuses himself to sue, or unless some other equitable ground is shown to exist, which would warrant it. The bill does not charge that he is insolvent —it does not charge that he colludes with Thomas Gilbert, or any body else, nor does it charge any ground upon which they can be exempted from the common rule.

[6.] It is claimed by the counsel for the defendant in error, that it does charge a *refusal* to sue. If it does, the complainants are properly here. We do not think that it shows a refusal to sue, or such neglect to sue as demonstrates a refusal. The only averment in relation to this matter, is as follows:

[7.] It states that he (Rogers) has collected none of the assets, " and has not brought suit against Hardwick and Gilbert, although requested so to do." We hold that this averment being taken as true, does not prove that Rogers has refused to sue. I do not consider that it would be a safe rule to allow creditors to sue upon this ground, unless it is *clear* from the bill that the executor or administrator has *refused* to sue. His refusal would be established by an averment in so many words, that he *had been requested to sue and had refused to sue.* The averment here falls short of this. It is that he *has not brought suit although requested so to do.* It may be true that he had been, at the time of suing out complainant's bill, requested to sue, and it may be true that he had not at that time brought suit, and notwithstanding he might not have refused to sue. The request to sue may have been made but an hour before complainant's bill was filed in office, and although at that time he had not brought suit, he may have sued the next hour or day. A mere demand will not do, nor will the fact, coupled with a demand, that at the time of filing the bill, the executor had not sued, be sufficient. The Court cannot thence infer a refusal to do his duty; it cannot thence infer that the rights of the creditors are in jeopardy, unless they are permitted to sue. From aught that this bill exhib-

its, the administrator *de bonis non* may have been quite vigilant. It does not appear when he had knowledge of this fraudulent sale to Thomas Gilbert. Facts should be so stated as to enable the Court to see that he has really declined to fulfil the obligations of his trust. As I said before, if he *expressly* declines to proceed, this Court will take him at his word and hold the creditors at liberty to interfere. So too, a refusal to sue may be inferred from long neglect to sue, after a knowledge of the rights of the estate in the premises. Here, however, it is necessary to be guarded. Not suing within any stipulated time, ought not, *per se*, to admit the creditors to a right of action. The omission to sue, should be for such a length of time, and under such circumstances, as will raise the presumption that the representative had declined to sue, and that unless the creditors were allowed to proceed, their just rights will be endangered. The *facts* upon which the complainants rely to take them out of the operation of the usual rule, should be pleaded with as much certainty as the other material facts. General statements, as in this case, are two vague for practical issues. Facts which are intended to demonstrate a refusal, ought to be so charged as to be issuable. ·It is impossible for us to say, admitting all that the complainants charge to be true, that they are entitled to be heard on this bill.

The decision of the Court below must, therefore, be reversed, and the demurrer sustained.