### BAILEY *et al* v. McALPIN, ordinary, for use, etc.

1. The courts of this State are bound to take notice of who are the public officers of the State, where the law requires such officers to be commissioned by the Governor.
2. Prior to 1820, suit could not be brought against the legal representative of a deceased person and the sureties on his bond until there had been a suit and judgment establishing a liability against the principal in his representative capacity, and also a suit against him in his individual capacity, establishing a devastavit.
3. The effect of the act of 1820 (Cobb's Dig. 484), as construed by the Supreme Court, was to render the suit against the legal representative in his capacity as an individual unnecessary, and not to dispense with the necessity of a prior suit and judgment against him in his representative capacity.
4. A court of equity could entertain jurisdiction of a suit against a legal representative and the sureties on his bond in the first instance, where there was no remedy at law, or where the remedy at law was for any reason inadequate.
5. The effect of that provision in the Code of 1863, § 2470, which declared that "No prior judgment establishing the liability of the administrator *or* a devastavit by him shall be necessary before suit against the sureties on the bond," was to permit a suit to be brought on the bond in the first instance against the administrator and his sureties.
6. The change of the word "or" into "for," following the word "administrator" in the section of the Code of 1863 above referred to, which was made in the Code of 1868, and followed in the subsequent codes, will be attributed to oversight, accident, or mistake, rather than to a deliberate intention to substantially change the law as laid down in that section; and consequently, under the law as it now exists, a suit may be brought on the bond against an administrator and his sureties, without first obtaining judgment against him either in his individual or representative capacity.

7. The ruling in *Henderson* v. *Levy*, 52 *Ga.* 35, being concurred in by only two Judges, and the decision in *Richardson* v. *Whitworth*, 103 *Ga.* 741, being concurred in by only five Justices, are not controlling, and will not be followed, as they are in conflict with the ruling in *Morgan* v. *West*, 43 *Ga.* 275, which was a decision by three Judges.

8. An administrator de bonis non may bring a suit against his predecessor and the sureties on his bond in the first instance, without establishing against the principal either a liability in his representative capacity or a devastavit by him.

9. A county administrator, who has been appointed administrator de bonis non of an estate may call to an account a former county administrator, who was appointed administrator on the estate and removed, by bringing suit against such county administrator and the sureties on his official bond.

10. Persons interested in the administration of an estate vested in a county administrator who has not been required to give any other bond than as county administrator are entitled to the same remedies on such bond as the law affords to persons interested in any estate upon the ordinary bond of the administrator.

11. A person interested in the administration of an estate vested in a county administrator may bring suit on his bond without joining as coplaintiffs persons interested in other estates the administration of which has been vested in the county administrator, and who have grievances against him.

12. A recovery against a county administrator and the sureties on his bond, by one interested in an estate vested in him, for a sum less than the full penalty in the bond, does not exhaust all remedies on the bond; but persons interested in other estates who may be aggrieved by his conduct may bring other suits and recover other judgments until the full penalty in the bond has been exhausted.

13. The admissions of the principal, made during the transaction of the business for which the surety is bound, become a part of the res gestæ and are admissible against the surety; otherwise they are not.

14. In a suit by an administrator de bonis non against his predecessor, who has been removed, and the sureties on his official bond, evidence showing that the principal, during the time of his administration, received assets, and after his removal failed and refused, upon demand, to deliver such assets to his successor, establishes a prima facie liability on the bond.

15. The evidence, without reference to that which was illegally admitted, demanded the verdict rendered; and no sufficient reason has been shown for reversing the judgment.

Argued March 10, —Decided March 25, 1905.

Action on bond.     Before Judge Norwood.     City court of Savannah.     December 12, 1904.

McAlpin, as ordinary, brought suit on a county administrator's bond, for the use of Wade as administrator of the estate of Porter, against Fripp as principal, and Bailey and Harrison as sureties, alleging that in 1901 Fripp was county administrator and as such gave bond as required by law, with Bailey and Harrison

as.sureties; that in 1902 Fripp was, by virtue of his office as county administrator, vested with the administration of Porter's estate, and took possession of the assets of the estate; that on June 9, 1903, the resignation of Fripp as county administrator was accepted by the ordinary, and Wade appointed in his stead, and on October 8, 1903, Fripp's letters of administration on the estate of Porter were revoked, and Wade was appointed in his place; that the amount due the estate of Porter by Fripp, at the time of revocation of his letters of administration and the appointment of Wade, was $203.29; that Wade as administrator of the estate of Porter demanded of Fripp this sum, which Fripp failed to pay, admitting that he did not then have it or any part thereof. A copy of Fripp's bond as county administrator and of his returns upon the estate of Porter, showing the amount due the estate in his hands to be the sum referred to, were attached to the petition as exhibits. Fripp and the sureties were each duly served. Fripp filed no answer. Harrison appeared and filed a written motion to quash the suit, on the ground that five separate and distinct suits had been brought on the bond of Fripp as administrator, when all of the claims against him in that capacity should have been united in one suit. This motion was overruled. Bailey and Harrison filed a demurrer to the petition, upon various grounds, but at the hearing insisted on only three of them; these three being that the petition failed to show when and how McAlpin became ordinary, and did not set forth his commission and qualification thereunder; that the petition did not show that Fripp had ever been called to account by the ordinary, and adjudged to be in default as administrator; and that there was no allegation that Fripp had been sued to judgment and had failed to respond thereto. The demurrer was overruled. Harrison and Bailey filed an answer, in which they admitted that they signed the bond sued on, but averred that they could neither admit nor deny the other allegations in the petition, for want of information. They offered an amendment to their answer, in which it was alleged that McAlpin had instituted suit against Fripp as principal, and Bailey and Harrison as sureties, upon the county administrator's bond, for the use of Wade as administrator of the estate of Brailsford, and had recovered a judgment thereon for $183.03; and that this judgment was a bar to any further

suit upon the bond. The court refused to allow the amendment. The plaintiff introduced testimony tending to establish the allegations of the petition, and the defendants introduced no testimony. The court directed a verdict in favor of the plaintiff for the amount sued for. Bailey and Harrison made a motion for a new trial, upon various grounds, which was overruled. They excepted to this ruling and to the other rulings referred to.

*Osborne & Lawrence* and *Twiggs & Oliver*, for plaintiffs in error. *W. H. Wade*, contra.

COBB, J. 1. The courts of this State are bound to take judicial notice of who are the public officers of the State holding under commissions issued by the Governor. *Ponder* v. *Shumans*, 80 *Ga.* 506 (2); *Abrams* v. *State*, 121 *Ga.* 170. The ordinaries of the several counties of this State are commissioned by the Governor. As the petition alleged that McAlpin was the ordinary of Chatham county, it was not necessary that there should be any averment as to his election and qualification. Judicial notice will be taken of the fact that he was the incumbent of that office at the time of the official acts alleged to have been performed by him.

2-7. Prior to 1820, it was necessary, before suit could be brought against the sureties upon an administrator's bond, that a devastavit should be established against the administrator, and to accomplish this it was necessary to bring a suit against him in his representative capacity and exhaust the assets of the estate in his hands, and then bring a suit against him in his individual capacity and exhaust his individual assets; the two suits being absolutely essential before suit could be brought against the administrator and the sureties on his bond. On December 13, 1820 (Cobb's Dig. 484), an act was passed which recited that it having been decided by the superior courts that suit could not be instituted against the sureties of executors, administrators, or guardians on their bonds until the principal should have been sued to insolvency, and as a great injury would flow to those who might be interested in the assets of estates, it was enacted that the sureties on such bonds should be considered as joint or joint and several obligors with the principal, so as to authorize heirs, distributees, administrators de bonis non, and others concerned to sue the principal and sureties, or either of them, in the same action; provided that if the principal was within the limits of the State,

he should be first sued, or should be sued in the same action with the sureties, but in the latter event he should be distinguished in the action as principal; and that the execution issued on the judgment should be levied first on the property of the principal, and if that was insufficient to satisfy the same, it might be levied upon the property of the sureties to collect such an amount as would be necessary to satisfy the execution in full. In *Ray* v. *Justices*, 6 *Ga.* 303, 308 (1849), it was held that the act of 1820 was intended to save one suit, and to allow the sureties to be joined with the principal, not in the first instance when he is sued representatively, but in the next action when he is charged personally with the devastavit. Judge Lumpkin said in that case that he knew it was supposed that the act of 1820 allowed the principal and sureties to be sued in the first instance, and that he at one time entertained that opinion himself, but had reached the conclusion that the effect of that act was simply to eliminate the second suit formerly necessary against the administrator in his individual capacity. This decision was followed in *Justices* v. *Sloan*, 7 *Ga.* 31 (1849), where Judge Nisbet said that some difference of opinion had prevailed among the members of the profession and the circuit judges as to the true construction of the act of 1820, and that there had been some doubt on this question in the minds of members of this court, but that after elaborate and diligent research that doubt was dispelled, and they were now satisfied with the correctness of the ruling then followed.

In 1852 an act was passed which provided, that upon the rendition of a judgment in favor of a party against an executor or administrator upon any liability of the decedent, and a return of nulla bona, suit might at once be instituted upon the bond of the executor or administrator, and judgment recovered against the principal and sureties in the same action; that if the principal was dead and had no legal representative, or had removed beyond the limits of the State, suit might be brought against the sureties alone on the bond; that if any executor or administrator failed to settle or account with a distributee or legatee, suit might be brought on the bond in the first instance, and judgment recovered against the principal and sureties, without a suit against the administrator or executor in his representative capacity; that if a guardian failed or refused to settle or account with his ward,

the ward might, upon coming of age, sue the guardian and his sureties without first suing the guardian; and that if an administrator, executor, or guardian had removed or resided beyond the limits of the State, or had placed himself in a situation where he would be subject to attachment, a party at interest might institute suit against the sureties on the bond in the first instance, without having obtained a judgment against the principal in his representative capacity; but that when judgment was obtained against the principal and sureties in such a suit, the property of the sureties should not be levied on until the property of the principal was exhausted, which might be evidenced by a return of nulla bona.    Acts 1851–2, p. 235.    In 1856 an act was passed which recited that it having been the intention of the General Assembly, in the passage of the act of 1852, to give to the creditors the same remedy as was therein given to legatees, distributees, and wards, it was enacted that when such representatives should remove from the State, or place themselves in a position where they would be subject to attachment, it was lawful for any person having demands against them to institute suits against the sureties on their bonds in the first instance, without first obtaining judgment against them in their representative capacity. Acts 1855–6, p. 145.    In *Johnson* v. *Koockogey*, 23 *Ga.* 184 (1857), Judge Benning, in dealing with a question not involved in the present discussion, said that he much questioned the soundness of the ruling in *Justices* v. *Sloan*, supra.    In *Alexander* v. *Mercer*, 7 *Ga.* 549 (1849), it was held that a bill in equity might be maintained against an administrator and the sureties on his bond, without first obtaining judgment against the principal, where the interposition of a court of equity was necessary to give to a person interested in the assets of the estate complete relief. See also *Woods* v. *Woods*, 7 *Ga.* 587; *Justices* v. *Hemphill*, 9 *Ga.* 65.    The provisions of the acts of 1852 and 1856 are now contained in the Civil Code, §§ 3501 to 3504 inclusive, and 2536, in practically the identical language in which they were embodied in the Code of 1863.   See Code of 1863, § 3295 et seq.

Section 2470 of the Code of 1863 is in the following language: "The administrator and his sureties shall be held and deemed joint and several obligors, and may be sued as such in the same action; and if the administrator is beyond the jurisdiction of this

State, or is dead, and his estate unrepresented, or is in such position that an attachment may be issued against him, the sureties or any one or more of them may be sued. No prior judgment, establishing the liability of the administrator or a devastavit by him, shall be necessary before suit against the sureties on the bond." This section is certainly in part a codification of the acts of 1820, 1852, and 1856. The question is, is it a mere codification; or does it introduce new law in any particular? Under the act of 1820, as interpreted by this court, a suit against an administrator in his representative capacity was absolutely essential as a condition precedent to a suit against the sureties on the bond. It is to be noted that there is an " or " between the words " administrator " and "a devastavit," and unless the expressions " liability of the administrator " and " devastavit " are to be used as meaning the same thing, the effect of the act was to dispense with two things, that is, a judgment establishing a liability of the administrator and a judgment establishing a devastavit. In the light of what must have been, at the time of the adoption of the code, the still existing doubts as to the soundness of the ruling in the *Ray* case as to the effect of the act of 1820, and the ruling that in equity a suit might be brought against the administrator and his sureties in the first instance, we think the words " liability of the administrator" are to be construed as meaning liability in his representative capacity, and "devastavit " as liability in his individual capacity; and therefore the effect of the code was to lay down the rule that it was not necessary, as a condition precedent to suing an administrator and the sureties upon his bond, to establish by a prior suit a liability against the principal either in his representative or in his individual capacity. In other words, the effect of the act was to accomplish exactly what was thought by many of the profession and some of the judges was accomplished by the act of 1820, and that is to provide a remedy on an administrator's bond by one suit, instead of by three, as was necessary before 1820, and by two as was necessary under the interpretation that the act of that year received. This section of the Code of 1863 appears in the Code of 1868, in section 2468, and the word " or " has been changed there to " for," and in every subsequent code the word " for" appears. Code of 1873, § 2507; Code of 1882, § 2507; Civil Code, § 3398. There has been no express legisla-

tion altering or changing the provisions of the section of the Code of 1863, above referred to; and it is therefore to be determined whether the adoption of the Code of 1868 by the Constitutional Convention of that year, or the adoption of the present code by the General Assembly, with the word "for" substituted for "or" had the effect to change the substance of the law of that section, if the change in the one word brought about this result. The clause in the present code reads: "No prior judgment establishing a liability of the administrator for a devastavit by him shall be necessary before a suit against the sureties on the bond " As it now reads, it is susceptible of the construction that the prior judgment to be dispensed with is that which fixed the liability of the administrator as an individual, and that a prior judgment against him in his representative capacity is still necessary, as it was under the interpretation placed upon the act of 1820.

When the clause as it appears in the Code of 1863 is viewed in the light of the doubt expressed as to the soundness of the decision in the *Ray* case, which was followed in the *Sloan* case, which doubt must have been known to and probably entertained by the codifiers, one of whom was the reporter of this court, who was necessarily familiar with the expressions by the judges in their opinions, and, we have no doubt, was thoroughly conversant with the prevailing opinion of the profession in reference to the matter, the conclusion is almost inevitable that the words of that clause were carefully selected and used advisedly, with the purpose of fixing with certainty and distinctness the rule for the future. If each word in the clause is allowed a meaning, and the language is given its plain interpretation, the use of the disjunctive "or" can lead to but one conclusion, and that is that it was the purpose of the codifiers to carry into the law of the State what so many lawyers and not a few judges thought was the true interpretation of the act of 1820. We have no doubt as to the meaning of this clause as it there stands, and little doubt that it was placed there to have exactly the meaning we have applied to it. Now, is this carefully worded clause in the code, accomplishing a purpose which is so consistent with reason, and which was believed to have been sought after by the framer of the act of 1820, to be entirely done away with, by reason of the fact that the compiler of the Code of 1868 allowed one single letter to find its place in

that section, which changed a word, and thereby changed the entire meaning of the clause? There being nothing in the legislation of this State expressly changing or amending the section of the Code of 1863, and no legislation which might be construed as an interpretation of that section, we think the interpolation of the letter "f" in the section of the Code of 1868 is rather to be referred to oversight, accident, or mistake, than to any deliberate purpose on the part of the codifier in the first instance, or the Constitutional Convention in the second instance, to work a radical change in the law of the State. If it was a mere mistake, then the section of the code was not changed by the action of the Constitutional Convention in adopting the Code of 1868. It has been more than once ruled that the Convention in adopting the Code of 1868 did not adopt mistakes made in the compilation of existing law. *City of Atlanta* v. *Gas-Light Co.*, 71 *Ga.* 106 (1*a*), and cit.; *Hardeman* v. *McManus*, 82 *Ga.* 20 (1*a*). And what has been said in reference to the adoption of the Code of 1868 by the Constitutional Convention is equally applicable to the adoption by the General Assembly of the Code of 1895. If the attention of the codifiers of the Code of 1895 had been called to the interpolation of this one little letter and the result upon the meaning of the section, we have little doubt that they would have restored the section in its original language as it was found in the Code of 1863. We therefore treat the section of the present code as if "for" is to be read "or," and so construing it, it means that a suit may be brought against an administrator and the sureties on his bond in the first instance, and that it is not necessary to establish a liability against him, either in his representative or individual capacity by judgments in prior suits. That is, since the Code of 1863, that can be done at law in one suit which formerly required three suits, and that can be done at law which formerly could be done only in equity.

In *Morgan* v. *West*, 43 *Ga.* 275, an action was instituted on an administrator's bond against the principal and sureties, in the name of the ordinary for the use of the plaintiff, who was the guardian of minors, and the intestate of the principal defendant was a former guardian. There was a demurrer to the declaration, on the ground that the suit on the bond could not be maintained until a suit had been first brought and judgment obtained against

the administrator and a return of nulla bona. Judge Warner said: "Under the 2468th section of the code [Civil Code, § 3398], a suit may be brought on the administrator's bond without first obtaining a judgment against the administrators for a devastavit by them and a return of nulla bona." This ruling has the effect to construe the code as it now stands as dispensing with the necessity of two suits. The act of 1820 dispenses with the necessity of a suit against an administrator in his individual capacity, and under this ruling the code dispensed with a suit against him in his representative capacity. Judge Warner in effect construed the section as it now stands as meaning the same thing as the language appearing in the Code of 1863. This decision was by three Judges. In *Henderson* v. *Levy*, 52 *Ga.* 35, Mr. Chief Justice Warner, after quoting the clause above referred to as it appears in the present code, said that whether this referred exclusively to suits on the bond when the administrator is beyond the jurisdiction, or is dead and the estate unrepresented, or is in a position where he would be subject to an attachment, might be admitted to be a doubtful question, but that "all that can be claimed under this section in any view of it, as to the alteration of the old law, is that no prior judgment establishing the liability of the administrator for a devastavit shall be necessary before suit against the sureties on the bond." He reasons that as the section of the code in relation to suits against administrators or executors by distributees or legatees and against guardians by wards and any other person, when such representative is dead and his estate is unrepresented, or he is beyond the jurisdiction of the court, or has placed himself in a position where he would be liable to an attachment, uses the expression, "in the first instance," this would have the effect to preclude a creditor from suing such representatives and their sureties on their bonds without first establishing a devastavit by a prior suit. So far as what is said by the learned Chief Justice in that case is in conflict with what was ruled in the case of *Morgan* v. *West*, the prior decision is controlling; especially because, while Judge McCay concurred in the judgment in the last case, he distinctly expressed his dissatisfaction with the reasoning of the Chief Justice, using the following language: "I am not prepared to say that in such a case the law will require a creditor to do so useless and expensive an act before he can sue the bond. A judg-

ment against the administrator establishing a devastavit is made unnecessary by the express words of the statute; and as in the case of waste of all the assets by the administrator, a suit against him, as such, is only necessary to establish the existence and waste of the assets, I think it unnecessary under our law."

In *McNulty* v. *Marcus*, 57 *Ga.* 507, it was held that a suit might be maintained against an administrator on his bond, although no prior judgment de bonis testatoris had been obtained when the sureties were not parties to the case. In the opinion Judge Bleckley said that the fact that the sureties were not sued would relieve the case from any conflict with the case of *Henderson* v. *Levy*, even if it were conceded that otherwise conflict would exist. In *Giles* v. *Brown*, 60 *Ga.* 658, it was held that suit might be brought against the sureties on an administrator's bond without establishing a devastavit by a prior judgment against the administrator, where he had removed from the State, and that this was true notwithstanding the administrator had been served while passing through the State and was a party to the suit. In *Richardson* v. *Whitworth*, 103 *Ga.* 741, a decision by only five Justices, it was held that a creditor of an intestate could not maintain an action against the administrator and the sureties on his bond until after a devastavit had been shown by a prior judgment, except where he had removed from the State, or subjected himself to attachment, or was dead and his estate was unrepresented. *Cameron* v. *Justices*, 1 *Ga.* 36, and *Justices* v. *Sloan*, 7 *Ga.* 31, are cited to sustain the conclusion there reached; but both of these decisions were before the code. *Henderson* v. *Levy*, 52 *Ga.* 35, was also cited; but, as has been shown, this decision is in conflict with *Morgan* v. *West*, and the decision last referred to was not called to the attention of the court. *Giles* v. *Brown* is also referred to as having cited *Henderson* v. *Levy* approvingly. Reference is also made to *Ramsey* v. *Cole*, 84 *Ga.* 147, where the plaintiff was nonsuited for a failure to introduce a judgment establishing a devastavit. In that case no question was raised as to whether it was necessary to establish a devastavit by a prior judgment. It seems to have been conceded that this was necessary, and the sole question was as to whether the evidence was sufficient to show a devastavit. But even if this decision is in conflict with *Morgan* v. *West*, it must yield to that decision. *Morgan*

v. *West* was really a suit by a creditor, the real plaintiffs being minors, who were suing the administrator of their former guardian. While the statute expressly authorizes a ward, upon coming of age, to sue his guardian and his sureties without establishing a devastavit by a prior judgment, the right of a minor to sue the administrator of his former guardian is controlled by the same rules which would control other persons having claims against the administrator. In such a case the minors are really creditors of the estate of the former guardian, and their right to sue is governed by the same rules that would govern other creditors. They were neither distributees nor legatees of the estate represented by the administrator, and, by a process of exclusion, they must be classified as creditors. See the collection of decisions on the necessity of a prior judgment, in 5 Enc. Dig. Ga. R. 703, 704.

8. At common law an administrator de bonis non could not call either his predecessor or the legal representative of his predecessor to an account for any property which the former representative had converted or wasted, nor could he claim or receive anything but those goods, chattels, and credits which remained in specie and were capable of being identified as the property of his intestate. This was the law of Georgia prior to 1845. *Thomas* v. *Hardwick*, 1 *Ga.* 78; *Paschal* v. *Davis*, 3 *Ga.* 256; *Oglesby* v. *Gilmore*, 5 *Ga.* 56; *Gilbert* v. *Hardwick*, 11 *Ga.* 599. In 1845 an act was passed which made it the duty of a removed executor or administrator and the representatives of a deceased executor or administrator to account fully with the administrator de bonis non. Cobb's Dig. 335. It was held that under this act an administrator de bonis non might call a removed predecessor, or the representatives of a dead predecessor, to an account touching the entire administration of the estate, and a predecessor was liable to him as at common law he was liable to creditors and distributees. *Oglesby* v. *Gilmore*, 5 *Ga.* 56; *Hardwick* v. *Thomas*, 10 *Ga.* 266. It was also held that the right of an administrator de bonis non to call his predecessor to an account did not divest the right of distributees, legatees, and creditors, but was consistent with and not hostile to their interest, and intended to be exercised for their benefit and advantage. *Shorter* v. *Hargroves*, 11 *Ga.* 658; *Knight* v. *Lasseter*, 16 *Ga.* 151. The Code of 1863 provided that if there be no administrator appointed, or if he

fails to bring the removed administrator to account, the heirs at law or distributees, or legatees if there be a will, may be sued directly for an account and settlement.    Code of 1863, § 2478. This provision now appears in the Civil Code, § 3406.    In *Bowers* v. *Grimes*, 45 *Ga.* 616, Judge McCay said that the code did not seem to contain any express authority to an administrator de bonis non to compel an account, but that such right was to be implied from the language of several sections, and that the act of 1845 was not inconsistent with the code and was still of force. The conclusion was reached in that case that creditors and heirs might, as they always could, call on the previous administrator, or his representatives, for an account and settlement, and that the administrator de bonis non might also do it; whether the administrator de bonis non would be held liable as for a devastavit for a failure to call his predecessor to account depending upon the nature of the estate, the character of the parties, etc.; each case standing on its own facts.    In *Giles* v. *Brown*, 60 *Ga.* 658, the act of 1845 was considered to be still of force, and the ruling was to the effect that an administrator de bonis non could call his predecessor, or his legal representative, to account by suit.    See also *Goodwynne* v. *Bellerby*, 116 *Ga.* 904; 5 Enc. Dig. Ga. R. 843, 844.

The administrator de bonis non having a right to call his predecessor to account, he may proceed against him in the same way that any other person interested in the estate would be authorized to proceed who had a right to call him to account.    Distributees, legatees, and creditors at common law had a right to sue a removed administrator for a devastavit, and they still have this right in Georgia, provided the administrator de bonis non does not sue; and the fact that their right to sue is made dependent upon his non-action necessarily indicates that the authority to sue is conferred upon the administrator himself.    If the administrator de bonis non refuses or fails to sue, distributees, legatees, and creditors could sue the removed administrator or executor and the sureties upon his bond in the first instance.    And as the administrator de bonis non, in calling his predecessor to an account, is acting in behalf of distributees, legatees, or creditors, as the case may be, he is entitled, as their representative, to the same remedies which they would have if they had sued in their own name.

Hence the administrator de bonis non may bring a suit against his predecessor and the sureties on his bond, in the first instance, without any prior suit establishing liability against him in his representative capacity, or a devastavit by him in his individual capacity. In reaching this conclusion, we have not overlooked the fact that the act of 1820 named administrators de bonis non as those who were authorized to bring suit against the principal and sureties on administrators' bonds. We do not think the fact that administrators de bonis non are not named either in the act of 1852 or of 1856, or in section 3398 of the Civil Code, which embodies portions of those acts, would authorize the conclusion that it was the purpose of the General Assembly, either in the acts or in the code, to deprive such administrators of a right which was expressly given in the act of 1820. Civil Code, § 3398, does not enumerate the persons who may sue, but simply provides when an administrator and his sureties may be sued. The question as to who may sue is to be determined by other provisions of the law fixing the right to sue; and the law vests the right to sue an administrator and the sureties on his bond in any one who has an interest in the assets of the estate and the faithful administration thereof by the administrator. The act of 1845 gives to an administrator de bonis non a right to sue, and this right is expressly recognized by the Civil Code, § 3406.

9. A county administrator, appointed under the authority of the Civil Code, § 3376, does not by virtue of his appointment become the legal representative of any estate, but upon his giving the bond required by law he assumes a position where he may be appointed the legal representative of such estates as the ordinary is authorized to place in his hands. When he resigns his office as county administrator, he does not thereby cease to be the administrator of any estate of which he has been legally appointed administrator, but remains as such until he has been removed or his resignation has been accepted as to each estate that he represents. *Gibson* v. *Carreker*, 82 *Ga.* 46. It follows from this, that where one has been appointed county administrator, and has had the administration of a given estate duly vested in him, and resigns his position as county administrator, and is removed as administrator from the estate, and another is appointed county administrator and duly appointed administrator de bonis non of

the estate of which the former county administrator was administrator, the new county administrator as administrator de bonis non of the estate may call the removed administrator to an account, by suit against him and the sureties on his bond. A county administrator, when duly appointed administrator of any estate, occupies the same position as to duties and liabilities as any other administrator.

10. The bond given by a county administrator is conditioned for the faithful discharge of his duty as county administrator as required by law, and the faithful discharge of duty required by law of such administrator is to do, in reference to the administration of any estate which may be vested in him, that which an ordinary administrator would be required to do in reference to such an estate. It therefore follows that a county administrator who has been appointed administrator of an estate and has not been required by the ordinary to give any other or additional bond than that which he has given as county administrator, is liable upon his bond under the same circumstances and to the same extent as if the bond had been given in the particular case ; and the remedies upon such bond are the same that would be allowed to those interested upon an ordinary administrator's bond.

11. So far as persons interested in the administration of estates vested in a county administrator are concerned, his bond is to be treated as a bond given for the faithful performance of his duties as administrator of each estate. Any person aggrieved by his conduct as administrator of the estate may bring suit on the bond, and it is not necessary that other persons who may have been aggrieved on account of his administration of other estates should be joined in the action with them.

12. When the various provisions of the Civil Code relating to the appointment of county administrators are taken together, it is manifest that the bond required of the county administrator was, to the extent of the penalty therein, to be for the protection of any and all persons who might be aggrieved by his conduct in reference to the estates in his hands, and that the remedies of these persons against the administrator would be the same as they would have against an ordinary administrator. While the general rule is that one suit and recovery upon a bond or obligation exhausts all remedies upon the bond, and no further suits can be brought

thereon, the General Assembly, either by express law or by necessary implication, may provide that this shall not be the rule in the case of public or quasi-public officers.    There is express statutory provision as to this matter in reference to bonds of certain public officers.    The legislation in reference to county administrators does not contain any express statement that this general rule shall not apply, but when the scheme of the statute is looked to, and the purpose for which the county administrator is required to give bond, it is necessarily to be inferred that the General Assembly did not intend that one suit and recovery upon the bond of the administrator for a sum less than the penalty should thereafter leave the county administrator as the legal representative of other estates without any bond for the protection of those interested in the assets in his hands.    If this had been the intention of the General Assembly, a provision would certainly have been made that upon a suit and recovery upon the bond the county administrator should be required to give a new bond for the faithful administration of other estates in his hands.    Persons interested in assets in the hands of a county administrator may continue to sue and recover judgment, and the sureties will have to respond until they have paid out a sum equal to the full penalty on the bond. Of course when this is done the sureties will be no longer liable to any one on account of the conduct of the county administrator.

13. Admissions of a principal, made during the transaction of the business for which the surety is bound, become a part of the res gestæ, and are admissible against the surety; but otherwise they are not.    *Dobbs* v. *Justices*, 17 *Ga.* 625 (5): Blair *v.* Ins. Co., 10 Mo. 559, s. c. 47 Am. Dec. 129; 2 Brandt on Suretyship (2d ed.), § 624.    Admissions made before the contract was entered into by which the surety is bound are inadmissible against him. *Johnson* v. *McCullough,* 59 *Ga.* 212 (1).    Admissions made by the legal representative of an estate, after his letters have been revoked, are inadmissible against the surety.    *Freeman* v. *Brewster*, 93 *Ga.* 649 (4).

14. While the revocation of letters of administration terminates the authority of the administrator as the representative of the estate, his liability on account of acts done while in office, or the retention of assets of the estate after removal, does not cease; and therefore the sureties on his official bond are just as much

bound for his failure to account for the assets of the estate in his hands at the time of removal as they are for his misappropriation of assets while in office. The faithful discharge of duty which the law requires of him in reference to the administration of the estate, and which he undertakes by the express terms of his bond, requires him, upon demand, to turn over to his successor, or any one interested in the estate who has authority to call him to an account, the assets in his hands. Whenever in a suit against the sureties it has been established by competent evidence that the administrator has received assets of the estate, and has not accounted for them during the term of his administration, and a demand for such assets is made upon him by his successor, and there has been a failure or refusal on his part to comply with this demand, a prima facie case of liability is made out against the sureties on the bond. See, in this connection, *Wyche* v. *Myrick*, 14 *Ga.* 584 (2). It is not altogether clear that in a suit by an administrator de bonis non against his predecessor who has been removed from office, and the sureties on his bond, evidence showing the removal from office and that assets had gone into his possession during his term of office, nothing else appearing, would make out a prima facie case of liability on the bond. See 2 Brandt on Suretyship (2d ed.), § 589. But certainly where, in addition to these facts, it also appears that the administrator de bonis non had made a demand upon his predecessor for the assets with which he was chargeable, and there was a failure or refusal to deliver, a prima facie case of liability is made out against the sureties on the bond.

15. The foregoing discussion embraces all of the questions raised in the record that require any elaboration. There was no error in admitting evidence from the records of the court of ordinary, showing the resignation of Fripp as county administrator, his removal as administrator of the estate of Porter, and the appointment of Wade as his successor as county administrator and as administrator de bonis non of the estate of Porter. There was no error in allowing Wade to testify that after Fripp's removal he made demand upon him for the assets which Fripp's returns charged him with, and that Fripp had failed and refused to deliver the assets to him. But it was error to admit the declarations of Fripp made after his removal as administrator. This

error will not, however, require a reversal of the judgment. The defendants introduced no evidence. From the testimony of the plaintiff it appeared that Fripp, while administrator of Porter's estate, had made a return charging himself with having received assets of the estate and crediting himself with certain payments made, the balance due him to the estate appearing on the face of the return. This return was prima facie evidence, both against Fripp and his sureties, as to the amount in his hands appearing therefrom. See 2 Brandt on Suretyship (2d ed.), § 628. It also appeared that Wade had demanded of Fripp these assets, and that he had failed to turn them over. This evidence, together with the admission in the answer of the sureties that they had signed the bond, and the other evidence showing Fripp's removal and Wade's appointment, made out a prima facie case both against the principal and the sureties; and there being nothing offered to rebut the case so made, the evidence demanded a verdict in favor of the plaintiff for the amount sued for, and there was no error in directing the jury so to find.

*Judgment affirmed. All the Justices concur.*